BERNARD HOUGH, WILLIAM CLENDENING, and THOMAS R. CLENDENING, trading as HOUGH, CLENDENING & CO., for the use of their Assignee, THE BALTIMORE WAREHOUSE COMPANY *vs.* THE PRESIDENT AND DIRECTORS OF THE PEOPLE'S FIRE INSURANCE COMPANY OF BALTIMORE.

*Parol testimony inadmissible to Explain the terms of a Policy of Insurance—Specific Policies—Measure of Damages in an Action on a Policy of Insurance — Double Insurances — Contribution — Right of a Consignee of goods, or Factor to Insure in his own name — Meaning of the words, " Held in Trust," used in a Policy of Insurance.*

Where a policy of insurance states that " the company insures the Baltimore Warehouse Company against loss or damage by fire to the amount of $20,000 on merchandise their own, or held by them in trust, or in which they have an interest or liability," parol proof is not admissible to show that the policy does not cover "merhandise their own," &c., as therein stated; but was intended to cover the merchandise only under certain circumstances; and if the said merchandise was insured by the owners thereof in other companies, that the interest of the warehouse company in said policy was not insured at all.

Where a policy of insurance is couched in plain and unambiguous language, resort to it alone must be had to determine the intention and meaning of the parties thereto; parol proof is inadmissible for such purpose.

Between the 5th of February, 1870, and the 15th of July, 1870, both days inclusive, the appellants deposited on storage in a certain warehouse, occupied by the Baltimore Warehouse Company, sundry lots of cotton in bales. For each lot deposited, the appellants received from the Warehouse Company a receipt, warrant or certificate which specified the number of bales, and the date of the deposit, and also the mark on the bales, the letters X. Q. being marked on each bale so deposited. These receipts or certificates were all numbered. On the 20th of June, 1870, the appellants deposited fifteen bales and took a receipt therefor,

APRIL TERM, 1872.    399

Hough, Clendening & Co. *vs.* Pres. and Directs. Peoples' Fire Ins. Co.

numbered 1221, and on the following day a policy of insurance was taken out to cover the particular number of bales thus deposited. On the 27th of June, the appellants deposited thirteen bales, and took a like receipt therefor, numbered 1238, and on the same day effected an insurance for the particular number of bales thus deposited. On the face of each policy the loss, if any, was made payable to the Warehouse Company; and the policies and receipts were delivered to the Warehouse Company, to secure advances made by it. On the policy on the fifteen bales there was endorsed in pencil in figures the number 1221, corresponding with the number of the warehouse receipt given therefor; and on the policy on the thirteen bales there was endorsed also in pencil 1238, corresponding with the number of the receipt for the cotton. At the time of each deposit, the depositor reserved a sample of the particular lot deposited. HELD :

That the policies were specific and not general; that each covered and was intended to cover the specific number of bales in each deposit, and the insurance on which was effected at the time of the deposit ; the policy of the 21st of June, 1870, covering only the fifteen bales deposited on the day previous, and the policy of the 27th of June the thirteen bales deposited on that day.

H, having deposited a large amount of cotton on storage with the Baltimore Warehouse Company, effected, among others, an insurance against fire on two particular lots; at one time on fifteen bales, and at another on thirteen bales. The warehouse containing the cotton of H, with that of others, was destroyed by fire. A portion of the cotton was saved and sold at auction by instruction of a committee of the insurance companies interested. The net proceeds of sale were distributed under the direction of the committee among the assured. In an action by H, to recover on his two policies, it was HELD :

That in ascertaining the amount of loss or damage which the plaintiff should recover, the jury ought to deduct such sum as they might find from the evidence was the proportion due to twenty-eight bales, in the distribution of the proceeds of sale of the cotton saved.

The Baltimore Warehouse Company, which received goods on storage, and issued receipts or certificates therefor to the depositors, effected an insurance in the Associated Fireman's Company for $10,000, against loss by fire for one year, "on merchandize generally, hazardous or extra hazardous, held by them, or in trust, contained" in a particular warehouse ; they also took out a policy in the Home Insurance Company, to the amount of $20,000, "on merchandise, hazardous or extra hazardous, their own, or held by them in trust, or in which they had an interest or liability," contained in the same warehouse. The appellants, on the 20th of June, 1870, deposited fifteen bales of cotton in the

400      MARYLAND REPORTS.

Hough, Clendening & Co. *vs.* Pres. and Directs. Peoples' Fire Ins. Co.

same warehouse, and received a receipt or certificate therefor from the Warehouse Company, and on the same day procured a policy of insurance on the cotton so deposited from the appellee. On the 27th of June they deposited thirteen bales, for which a like receipt was given, and on the same day they effected an insurance for the cotton with the appellee. Under the policies issued to the appellants, the loss, if any, was payable to the Baltimore Warehouse Company. The appellants had other cotton to a large amount stored with the Warehouse Company. The Warehouse Company advanced to the appellants over $48,000 upon the cotton belonging to them, and stored in the warehouse. In the policies to the appellants, as well as in those to the Warehouse Company, it was stipulated that in case of loss the assured should not be entitled to recover on such policy any greater proportion of the loss or damage sustained to the subject insured, than the amount thereby insured should bear to the whole amount of the several insurances thereon. On the 18th of July, 1870, the warehouse was burned, and of the cotton stored therein, some of the bales were saved, some were partially destroyed, and others totally destroyed. In an action by the appellants, for the use of the Warehouse Company, on the policies of insurance issued by the appellee, it was HELD:

That the policies sued on having been made payable to the Warehouse Company, inured to the benefit of the company, and may be considered as in favor of the same assured, on the same interest, in the same subject, and against the same risks as the policies which were issued directly to the Warehouse Company; and with the latter policies constituted a double insurance; and the companies therefore issuing the policies were bound to contribute their respective proportions of the loss.

A person having goods in his possession as consignee, or on commission, may insure them in his own name, and, in the event of loss, recover the full amount of the insurance, and, after satisfying his own claim, hold the balance as trustee for the owner.

The words "*held in trust*," applied to goods insured, mean goods with which the assured is intrusted; not goods held in trust in the strict technical sense, so held that there is only an equitable obligation in the assured, enforcible by *subpœna* in chancery, but goods with which they are intrusted in the ordinary sense of the word.

APPEAL from the Superior Court of Baltimore City.

Two actions of *covenant*, consolidated by consent, were instituted by the appellants, Hough, Clendening & Co., for the use of their assignee, the Baltimore Warehouse Company,

against the appellees: the first to recover on a policy issued by the appellees, dated the 21st of June, 1870, whereby the company insured Hough, Clendening & Co., during thirty-five days, from the date of the policy, against loss or damage by fire to the amount of $1,400, on fifteen bales of cotton stored in Tobacco Warehouse No. 2, O'Donnell's wharf, then occupied by the Baltimore Warehouse Company; the second to recover on a policy dated the 27th of June, 1870, whereby the appellees insured the appellants in exactly similar words of description, during thirty-four days, to the amount of $1,100 on thirteen bales of cotton. The defendants pleaded:

1st. That they were not indebted as alleged.

2d. That they did not promise and covenant as alleged.

3d. That the plaintiffs did not furnish preliminary proofs of loss to the defendants according to the terms of the policy sued on, and the defendants had not waived their rights to except to the insufficiency of the same.

4th. That during the time when said cotton was alleged to have been insured by the said policy of insurance, there were other insurances thereon, and by the terms of said policy the defendants were only responsible for such proportion of such alleged losses, as the amount of its insurance should bear to the whole amount of such other insurance. The plaintiffs joined issue on the first, second and third pleas, and replied to the fourth as follows:

That during the time when said cotton was insured by the said policy of insurance, there were not other insurances thereon; such that by the terms of said policy, the defendants were only responsible for such proportion of the losses as the amount of their insurance bore to the whole amount of such insurance. Issue was joined on the replication.

*First Exception:* At the trial of this cause, the plaintiffs, to maintain the issues on their part, proved, by the introduction of the Act of Assembly of 1867, ch. 232, in the printed volume, the incorporation of the defendant, and adduced two

policies of insurance against fire, issued by the defendant under its corporate seal, the execution of each of which by the defendant, was admitted.

The particulars of these policies, material to the issues, are these:

In the one dated June 21st, 1870: "The President and Directors of The People's Fire Insurance Company of Baltimore, in consideration of one $\frac{64}{100}$ dollars, to them paid by the insured hereinafter named, the receipt of which is hereby acknowledged, do insure Hough, Clendening & Co., against loss or damage by fire, to the amount of fourteen hundred dollars, on fifteen bales of cotton stored in Tobacco Warehouse No. 2, O'Donnell's wharf, now occupied by the Baltimore Warehouse Company; other insurance permitted without notice until required. Loss, if any, payable to the Baltimore Warehouse Company."

"And the said company do hereby promise and agree to make good unto the said insured, their executors, administrators or assigns, all such loss or damage, not exceeding in amount the sum hereby insured, as shall happen by fire to the property as above specified, during thirty-five days, to wit, from the 21st day of June, 1870, (*at* 12 *o'clock at noon,*) until the 26th day of July, 1870, (*at* 12 *o'clock at noon*)—the said loss or damage to be estimated according to the actual cash value of the said property at the time the same shall happen." On this policy there is endorsed in pencil the number in figures, "1221."

In the other policy, dated June 27th, 1870, the corresponding portion of the contract is the same, except that the premium is "one $\frac{25}{100}$ dollars;" the amount of insurance is "eleven hundred dollars;" the number of bales is "thirteen;" the time "thirty-four days," from 27th day of June, 1870, (*at* 12 *o'clock at noon,*) until the 31st day of July, 1870, (*at* 12 *o'clock at noon.*)

On this policy there is endorsed in pencil then umber in figures, "1238."

In the body of the contract in each policy is this stipulation: "In case of loss the insured shall not be entitled to recover on this policy any greater proportion of the loss or damage sustained to the subject insured, than the amount hereby insured shall bear to the whole amount insured thereon, whether such insurance be by specific or by general or floating policies." And also this: "If any other insurance has been or shall hereafter be made upon the said property, and not consented to by this company in writing hereon, then this policy shall be null and void."

Among the "*conditions of this insurance,*" annexed to each policy, are the following, to wit:

III. "If the property to be insured be held in trust or on commission, or be a leasehold interest or equity of redemption, or if the interest of the insured in the property be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the insured, it must be so represented to the company and so expressed in the written part of this policy, otherwise the policy shall be void," &c.

IV. "Goods held on storage must be separately and specifically insured."

X. "In case of any loss or damage to the property insured, it shall be optional with the company" "to take the goods at their appraised value," "giving notice of their intention to do so within thirty days after having received the preliminary proofs of loss," &c.

The plaintiffs further proved by James Godwin: That he was in the employment of the plaintiffs during the years 1869 and 1870; the business of the plaintiffs was that of cotton factors chiefly; that the cotton sent to them was from a large number of different persons, and in lots of various sizes, from one bale upwards, and was to be sold at a time limited, or at the discretion of the factors, or at such time as should be afterwards directed by the shipper, as the instructions happened to be; that the cotton market was declining in the summer of 1870; that the plaintiffs had six hundred and

404        MARYLAND REPORTS.

Hough, Clendening & Co. vs. Pres. and Directs. People's Fire Ins. Co.

seventy-five bales of cotton in the warehouse described in the policies sued on—which warehouse was destroyed by fire on July 18th, 1870; none of it was returned to them after the fire; that Albert Rhett had weighed the cotton, lot by lot, before it was stored; that samples of each lot had been taken out and retained in the office of the plaintiffs; at the time of the fire there was there a sample of each bale that was in the warehouse; that the plaintiffs had, at the time of the fire, insurance on six hundred and seventy-six bales of cotton in this warehouse—one more than the number in store there; that in each of the policies held by them the insurance was on a specific number of bales.

On cross-examination, the witness said: He spoke from the books of the house, not from his own knowledge, as to the number of bales; he saw the fire and knew that the cotton of the plaintiffs was there; the loss on this was not total; some bales were burned, some saved; how many were saved witness does not know, nor how many absolutely lost.

The plaintiffs further proved by William B. Hooper: That he was the storekeeper of the Baltimore Warehouse Company in July, 1870; that this warehouse was burned on the 18th July, 1870; the plaintiffs had therein six hundred and seventy-five bales of cotton; there were in all, 1,452 bales of cotton in the warehouse at the time of the fire; also some tobacco and bark; the other cotton belonged to different parties.

They further proved by Albert Rhett, that he was a public weigher; that he weighed nearly all Hough, Clendening & Co.'s cotton; was under the impression he weighed every bale of their cotton that went into this warehouse; he gave certificates of these weights; identified certificates shown to him as his, from which it appeared that the fifteen bales of the plaintiffs, embraced in the policy of the 21st of June, weighed six thousand two hundred and sixty-one pounds, and the thirteen bales, covered by the policy of the 27th of June, weighed five thousand four hundred and eighty-two pounds.

APRIL TERM, 1872. 405

Hough, Clendening & Co. *vs.* Pres. and Directs. People's Fire Ins. Co.

The plaintiffs further proved by Charles Rhett, that he was a cotton-broker in 1870 ; it was very often part of his business to determine the grade of cotton ; was called upon by Hough, Clendening & Co. after this fire ; went to their office, examined a number of bundles of samples ; there were six hundred and seventy-five samples ; his partner, Mr. Smith, assisted him ; examined them minutely ; graded from " good middling " to " low middling " and " ordinary ;" made an average of the various bundles ; the whole averaged a fair class of " low middling " cotton ; estimated its value, at the time of the fire, at $18\frac{3}{4}$ cents per pound.

They proved further by James Hooper, that he was President of " The Baltimore Warehouse Company ;" gave receipts for cotton deposited on storage ; for this purpose a printed blank was used—the date, subject matter and particular place of deposit, and the name of the depositor being filled in, and the mark inserted in an appropriate place in the margin, in manuscript. In every instance of deposit by the plaintiffs, between the 5th of February, 1870, and the 15th of July, 1870, the *mark* in the margin of the corresponding certificate was X. Q. The witness produced the receipts given to the plaintiffs for cotton stored, which were put in evidence. The receipt issued to the plaintiffs on each deposit of cotton contained the printed notice that "the property mentioned therein was held by the corporation as bailees only, and was not insured by the corporation.

They further proved by this witness, that the cotton that was saved from the fire was sold at auction, by instruction of a committee of the insurance companies ; Hough, Clendening & Co. had insurance on six hundred and seventy-five bales of cotton in this warehouse, to the amount of about $60,000. The warehouse company had advanced Hough, Clendening & Co., on the whole number of bales, to about $48,720.

On cross-examination this witness said, the warehouse company did not insure all the cotton in their warehouse ; kept $30,000 insurance to cover, in case insurance by the depositors

was not sufficient; did not insure except where advances had been made. It was the course of business of the warehouse company, on receiving cotton, to give a warehouse receipt, such as those already introduced in evidence; and if advances were asked, one of the conditions of the advance was, that the depositor should insure in the form adopted in the policy sued on, and deliver such policy to the company, together with the warehouse receipt; the insurance to be for an amount sufficient to cover the advance. The defendant proved by this witness, and put in evidence two policies of insurance held by "the Baltimore Warehouse Company," and outstanding at the time of the fire, as follows:

1st. Policy No. 1542, Home Insurance Company of the city of New York, for $20,000, bearing date December 7th, 1869, of which the parts material to this issue are contained in the following extracts, to wit; in the body of the contract it is stipulated thus:

"By this policy the Home Insurance Company, in consideration of one hundred dollars to them paid by the insured, hereinafter named, the receipt whereof is hereby acknowledged, do insure The Baltimore Warehouse Company against loss or damage by fire, to the amount of twenty thousand dollars, on merchandize, hazardous or extra hazardous, their own, or held by them in trust, or in which they have an interest or liability, contained in that part of State Tobacco Warehouse, No. 2, used by them, lying between Frederick Street Dock and Long Dock, separated by a street from the south end of the Maryland Sugar Refinery; other insurance permitted without notice, unless required; to cover whilst on the street and pavement around said warehouse, as per application. And the Home Insurance Company, above named, for the consideration aforesaid, do hereby promise and agree to make good unto the said assured, their executors, administrators or assigns, all such loss or damage not exceeding in amount the sum insured, as shall happen by fire to the property as above specified during one year, to wit: from the 7th

day of December, 1869, (at 12 o'clock at noon,) until the 7th day of December, 1870, (at 12 o'clock at noon)—the loss or damage to be estimated according to the actual cash value of the said property at the time the same shall happen," &c.

"If any other insurance has been, or shall hereafter be made upon the said property, and not consented to by this company in writing hereon," "this policy shall be null and void. In case of loss, the insured shall not be entitled to demand or recover on this policy any greater proportion of the loss or damage sustained to the subject insured, than the amount hereby insured shall bear to the whole amount insured on the said property."

And among the "conditions of insurance" annexed were the following:

4. "If the property to be insured be held in trust, or on commission, or be a leasehold or other interest not absolute, it must be so represented to the company, and expressed in the policy in writing, otherwise the insurance as to such property shall be void," &c. "Goods held on storage must be separately and specifically insured."

9. "Persons sustaining loss or damage by fire, shall forthwith give notice thereof," &c., "and as soon after as possible they shall deliver in as particular an account of their loss," &c. "And they shall accompany the same with their oath," &c., "declaring what other insurance, if any, existed on the same property, and giving a copy of the written portion of the policy of each company," &c., "and until such proof, declaration," &c., "are produced," &c., "the loss shall not be payable."

2d. Policy No. 11,898, Associated Firemen's Insurance Company, for $10,000, dated October 29th, 1869, of which the parts material to the issues here joined, are contained in the following extracts. In the body of the contract, which is under the seal of the company, it is covenanted thus:

"This instrument, or policy of insurance, witnesseth, that the president and directors of the Associated Firemen's Insur-

ance Company of Baltimore, in consideration of the sum of fifty dollars to the said corporation paid, the receipt whereof is hereby acknowledged, have agreed to insure, and do hereby insure, the Baltimore Warehouse Company against loss or damage by fire, to the amount of *ten thousand dollars,* on merchandize generally, hazardous and extra hazardous, held by them or in trust, contained in that part of No. 2 Warehouse used by them, lying between Frederick Street Dock and Long Dock, opposite side of a small street running by south side of Maryland Sugar Refinery; to cover whilst on the street or pavement around said warehouse; other insurance permitted without notice until required, per application. In consideration thereof or of the premises, the president and directors of the Associated Firemen's Insurance Company of Baltimore, do hereby covenant, promise and agree to, and with the said assured, their executors, administrators and assigns, to pay and satisfy all loss or damage which the assured or their assigns may or shall sustain by fire upon the property hereby insured, not exceeding in amount the said sum of ten thousand dollars, if such loss or damage shall be sustained within the terms of one year from the day of the date of these presents, which shall be deemed to expire at noon on the 29th day of October, 1870." "In case the assured shall have already any other insurance made on the hereby insured premises, he shall notify the same to this corporation before or at the time of executing this policy, and cause the same to be endorsed thereon, otherwise this insurance shall be void and of non-effect; and if the assured or their assigns shall hereafter make any other insurance on the hereby insured premises, he shall, with all reasonable diligence, notify the same to this corporation, and have the same endorsed on this policy, or otherwise acknowledged in writing by this corporation; or in default thereof, this policy shall cease and be of non-effect. And it is further declared and agreed, that in case of any other insurance being made upon the premises hereby insured, either prior or subsequent to the date of these pres-

ents, the assured shall not, in case of loss or damage, be entitled to demand or recover on this policy any greater proportion of the loss sustained than the amount hereby insured shall bear to the whole amount of the several insurances made, or to be made, on the premises insured by this policy."

And among the *"conditions of insuring,"* accompanying the policy, are the following, to wit:

" 3. Goods held in trust or on commission are to be declared as such, otherwise the policy will not extend to cover such property."

" 4. Every policy of insurance made by this company shall be sealed with its seal, signed by its president and attested by the secretary, and the person for whose interest the insurance is made, must be declared and named therein," &c.

" 8. All persons insured by this company, sustaining any loss or damage by fire, are forthwith to give notice," &c., " and as soon after as possible to deliver in as particular account of their loss or damage," &c., " and shall make oath," &c., " whether any and what other insurance is made on the same property."

This witness, on his cross-examination, further said, that the Warehouse Company did not insure goods deposited by customers, except for amount of goods not insured by party; the notice in the receipt was intended to notify depositors that their goods were not to be insured by the company, nor was the company to get insurance. (The witness referred to the charter of the company, Act of 1867, ch. 268, sec. 10, last paragraph: " Every such receipt, warrant or warehouse certificate shall contain on its face, a notice that the property mentioned therein is held by this corporation as bailees only, and is not insured by this corporation.")

Any statement of the witness as to the intention or purpose of the papers offered in evidence, and other than that shown by the papers themselves, was objected to by the counsel for the defendant, as not inquired after by their question, but volunteered by the witness. Two warehouse receipts, to

wit, one of June 21st, 1870, numbered "1221," for fifteen bales of cotton, and the other, of June 27th, 1870, numbered "1238," for thirteen bales of cotton, being shown to witness, he said he could not say whether these lots, or either of them, was among the cotton saved or lost; the value of the whole goods in the warehouse, at the time of the fire, was from $120,000 to $130,000.

Upon proceeding to examine this witness in reply, the question was propounded: "You have stated, in your answer to a question by the counsel for the defendant, that you did not insure all the cotton in the warehouse of the Baltimore Warehouse Company, but only to cover advances made by the company, in so far as they were not covered by specific insurance of the parties owning the cotton, will you say whose and what interest was it your *intention* to cover by the policies of insurance taken out by the Baltimore Warehouse Company in 'The Home,' of New York, and in the Associated Firemen's Insurance Company?"

The defendant's counsel objected to the admissibility of the evidence sought by the question, and the Court sustained the objection and refused to permit the witness to answer the question.

The plaintiffs then offered to prove, that at the time of applying for and taking out the two policies taken by the Warehouse Company in its own name, the president of the Warehouse Company stated to the agents of the insurance companies applied to, that he desired to obtain insurance to protect the Warehouse Company against any loss or damage not covered by policies taken out by the depositors of cotton or other merchandize in their warehouse, in which the Warehouse Company was interested; and upon objection made the Court refused to admit the evidence proposed. The plaintiffs excepted.

*Second Exception:* The plaintiffs' counsel then propounded to this witness the question: "Did you or not, before the issuing of the policies sued on in this case, and before the

deposit of the cotton destroyed by fire on July 18th, 1870, notify Hough, Clendening & Co. that the Warehouse Company would not effect insurance on their cotton deposited in its warehouse, and that they must insure it themselves?" Upon objection made on the part of the defendant, the Court refused to permit the witness to answer this question; and the plaintiffs then offered to prove, that before the issuing of the policies sued on in this case, and before the deposit of the cotton destroyed by the fire of July 18th, 1870, the president of the Warehouse Company notified the plaintiffs that the Warehouse Company would not insure their cotton, and that they must insure for themselves, and that this notice was acquiesced in and not objected to by the plaintiffs, and that the plaintiffs did thereupon for themselves insure all their cotton; which proof, upon objection made on the part of the defendant, the Court refused to allow to be admitted. The plaintiffs excepted.

*Third Exception:* The plaintiffs further proved by George B. Coale, a statement, having a certificate appended, signed by witness as for the committee, showing the conditions and expenses of the rescuing and assorting, &c., of the cotton after the fire, the disposition of it and the mode of distribution of the net proceeds. They further proved by this witness that the statement was made up by the direction of the committee, consisting of Snowden, White, Hartman, Andrews and the witness; there were two hundred and eighty-nine bales of cotton in all, identified as belonging to particular owners, less expenses on them; of these, seventy-five belonged to Hough, Clendening & Co.; these brought, at the auction sale, $4,823.35, subject to deduction of $297.25 for special expenses; their missing, and not identified cotton, (six hundred bales,) was entitled, as their proportion of the proceeds of sale, to $8,636.63, subject to deduction of $3,734.75, their proportion of the expenses on the un-identified; the net proceeds of their cotton of both classes, was $9,427.98 or $13.94, (13.96⅔,) salvage to each bale of Hough, Clendening & Co.

412 MARYLAND REPORTS.

Hough, Clendening & Co. vs. Pres. and Directs. People's Fire Ins. Co.

They further proved by Bernard Hough, one of the plaintiffs, that the plaintiffs had policies covering six hundred and seventy-six bales of cotton in this warehouse; each policy covered a specific number of bales; the Warehouse Company was in the habit of advancing to Hough, Clendening & Co., from time to time, as they made deposits.

On the cross-examination, the witness said, each policy contained the number of bales insured, as they were specifically insured. The Warehouse Company was in the habit of advancing Hough, Clendening & Co., on the various lots deposited from time to time, and Hough, Clendening & Co. insured the various lots as they were deposited.

On re-examination by the plaintiffs, the witness stated, it was their habit to take out policies on each additional lot of cotton as it came in; they took out policies whenever they added additional cotton.

Thereupon the plaintiffs' counsel asked the witness to explain whether he meant to say that it was his habit to effect insurance on each specific lot of cotton, or to effect insurance generally on an additional number of bales equal to the lot deposited; the witness said, that while the receipt of the cotton was the occasion of taking out the new policy, it was not meant to cover cotton only.

This testimony was objected to by the defendant, as explaining by parol the intention of the party in a written contract, the terms whereof were clear, and it was excluded by the Court; and to this refusal of the Court to admit this testimony, the plaintiffs excepted.

*Fourth Exception:* The defendant, to maintain on its part the issues joined, proved by a witness, whose business in part was to adjust losses in insurance matters, that he was employed by the companies to ascertain the loss, and protect their rights in salvage. He produced two papers containing the results of his adjustment, and said the general policies were divided up into contributing insurances, in the ratio of the sound value of the property covered by specific insurances,

to that covered by general policies; the general insurance should have contributed at the rate of $17.50 per bale to specific insurance. On twenty-eight bales the general insurance would contribute $490; the result would be affected by insurance on the tobacco which was in the warehouse; the salvage is to be credited to the defendant; its proportion of saved cotton—some $400—to be credited. Witness first applied the general insurance to the cotton not insured; amount of this application, $2,183.32.

On cross-examination the witness said the right of contribution arose from the fact that the Warehouse Company had made advances on lots of cotton covered by the specific policies, and by assignment of specific policies to the Warehouse Company had made the general insurance contributory; if there were cotton there not advanced on, it was not included in the assignment; $8,536.71 were allowed to Hough, Clendening & Co. for difference of insurance, to cover one hundred and nine bales not considered as specifically insured. There was cotton not covered, but no claim was made by any company or person. If general policies contribute to pay Warehouse Company's advances, they would be entitled, in witness' view, to subrogation.

The plaintiffs thereupon submitted to the Court the following prayers:

1. If the jury shall find that the plaintiffs are entitled to recover, then, in ascertaining the amount which the plaintiffs are to recover, the jury are not to make any abatement therefrom on account of the two policies of insurance issued by "The Home Insurance Company" and "The Associated Firemen's Insurance Company" to the Baltimore Warehouse Company, and offered in evidence by the defendant.

2. That by the true construction of the policy of insurance isssued by the defendant to the plaintiffs, bearing date the 27th of June, 1870, and offered in evidence by the plaintiffs, it covered not thirteen specific bales of cotton, but any thirteen bales of cotton which were stored by the plaintiffs in

414 MARYLAND REPORTS.

Hough, Clendening & Co. vs. Pres. and Directs. People's Fire Ins. Co.

Tobacco Warehouse No. 2, on O'Donnell's wharf, and were there remaining on the 18th July, 1870.

4. If the jury find from the evidence that the plaintiffs are entitled to recover, then, in ascertaining the amount of loss or damage which the plaintiffs are to recover, the jury ought to deduct such sum as from the evidence in the cause they may find is the proportion due to twenty-eight bales of cotton, in the distribution of the proceeds of sale of the rescued and saved cotton.

The defendant prayed the Court to instruct the jury as follows:

That the plaintiffs have offered no proof upon which the jury can allow damages for any injury by fire to the cotton insured by either of the policies of the defendant which are in suit.

The Court (DOBBIN, J.) refused the prayers of the plaintiffs and granted the prayer of the defendant. The plaintiffs excepted, and the verdict and judgment being against them they appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ALVEY, J.

*John A. Inglis* and *I. Nevett Steele,* for the appellants.

I. The policies sued on may be taken in combination, as constituting a promise of the appellee, to make good to the appellants any loss by fire that should happen during a period of time, embracing the 18th of July, 1870, (the day of the fire,) to *any cotton in bales* of the appellants, stored as in these policies is described—the pecuniary extent of the risk being, however, *not absolute* to make good the loss, whatever that may be, but *restrained by two limitations—first:* a specified sum of money, say $2,500; and, *second,* the value of a specified number of bales, say twenty-eight. The liability of the appellee can never, in any event, exceed whichever of these two sums shall, in the event, prove to be the smaller.

The same was true of all the other policies held by the appellants on cotton in bales so stored and outstanding at the fire. And all these policies together, covering a number of bales, in the aggregate exactly corresponding to the whole number in store at the time of the fire, there was in the actual event, *as among them,* no double insurance, and the appellants are entitled to recover from the appellee in this action, *prima facie,* the market value on the day of the fire, as proved, of twenty-eight bales. The ratable proportion of the " salvage," or proceeds of the cotton rescued and sold, apportioned to the appellee's credit, being already in the hands of the assignee of the policies, operates as a payment, *pro tanto,* towards the satisfaction of the appellee's liability as thus ascertained, and to that extent should reduce the recovery.

If this view of the proper construction of the contract be correct, there was in the evidence abundant proof of loss to the appellants within the risk assumed by the appellee in the contracts sued on, upon which the jury could and ought to have allowed damages—and the instructions asked for by the appellants in their second, third and fourth prayers, ought to have been *granted,* and that asked by the defendant ought to have been *refused.*

Was the contract, for the insurance of twenty-eight specific bales of cotton, distinguished from all others, or of any bales not exceeding twenty-eight in number? The language of the contract itself imports *indefiniteness,* not *specification* as the intention of the parties. An *indefinite* expression shall be understood universally, unless there be some reason to restrain it. *Chitty's Contr.,* 83. *Specification,* if intended, would have been very easy of accomplishment. The analogy of insurance on a " *stock of goods.*" *Flander's Fire Ins.,* 421 ; *Hooper vs. Hudson River Ins. Co.,* 17 *N. Y.,* 424 ; *Hoffman vs. Ætna Ins. Co.,* 32 *N. Y.,* 405 ; *West Branch Ins. Co. vs. Helfenstein,* 40 *Penn. St.,* 289 ; *Wolfe vs. Security F. Ins. Co.,* 39 *N. Y.,* 49 ; *Walton vs. La. M. & F. Ins. Co.,* 2 *Rob. La.* 563.

If there is, in the language itself, any room for doubt that it imports *indefiniteness* as the *intention*, yet, unless it clearly imports *specification*, it is to be taken most strongly in favor of the assured—that one of the two possible constructions will be adopted which most advances the indemnification of the assured. *Flander's Fire Ins.*, 72; *Franklin Ins. Co. vs. Brock*, 57 *Penn. St.*, 74; *Balt. F. Ins. Co. vs. Loney*, 20 *Md.*, 20. ·

Being the language of the *insurer*, and in the *written* portion of the contract, and so specially employed for the occasion, it will have that of the two possible constructions, which is the more favorable to the assured, rather than that which is more favorable to the insurer, who ought to have made it clear. *Broom's Leg. Max.*, 459; *Carroll's Lessee vs. Granite Manuf. Co.*, 11 *Md.*, 411; *Stockham vs. Stockham*, 32 *Md.*, 209.

The surrounding circumstances may be resorted to, to shed light upon the sense in which the language of the contract was used. Evidence of them was introduced on both sides, and relied upon as aiding in the interpretation of the language—the *pencil* marks on the policies; the nature of the appellants' business as factors. And if this aid be needed, the evidence of such circumstances ought to be passed upon by the jury. They were presented to, and may have influenced the judgment of the Court below. *Neilson vs. Harford*, 8 *M. & W.*, 806; *Shore vs. Wilson*, 9 *Clarke & Fin.*, 355; *Goldshede vs. Swan*, 1 *Exchq.* 154; *Simpson vs. Margitson*, 11 *Q. B.* 23.

The appellants' third exception does not claim that the witness, Hough, could testify to his *intention* in making the contract,—as a fact, independent of the writing, but that he was entitled to explain the language on this point brought out from him on his cross-examination according to the fact, and prevent a wrong effect being given to that language. *Schwarz vs. Yearly*, 31 *Md.*, 275.

II. Even if the contracts are to be construed as the Court below has construed them, as constituting only an insurance

on *certain specific bales of cotton, twenty-eight in number,* stored as described, distinguished from all others so stored, still there is *evidence* of loss to the appellants, within the risk assumed by the appellee, on the force and effect of which the jury ought to have been allowed to pass their judgment, and the prayer of the appellee ought not to have been granted.

All the lots of cotton stored by the appellants in this warehouse, and remaining there at the fire, were marked in the same way: the mark, therefore, furnished no means of distinguishing any particular lot from all the others, or any particular bales as belonging to any distinct lot, or of identifying it even as deposited on a particular day. There was nothing in the description in the policy that could aid the identification of any specific cotton as intended to be covered by the insurance therein. It was not possible, therefore, to distinguish any particular bales of those saved, as belonging to any particular or distinct lot, or embraced within the risk of any particular insurer. Under such circumstances, inasmuch as of six hundred and seventy-five bales of cotton all insured in like manner as in the present case, all were destroyed but seventy-five, the jury had a right to pass on the probabilities arising out of the facts proved, aided by the concessions which the appellee's subsequent conduct might seem to them to imply, as to whether the particular cotton intended to be covered by the appellee's contract, or any part of it, was saved or lost, and apportion to the appellee its ratable share of the loss.

III. If, upon a proper construction of the contract, there was evidence of a loss to the appellants, within the risk assumed by the appellee, the proper measure of the appellee's liability, and of the appellants' recovery in the action, is the market value, on the day of the fire, as this appeared in proof, of twenty-eight bales of cotton of the average weight and quality as proved, reduced by the application, as a payment *pro tanto* thereon, of the ratable proportion of the "salvage," or proceeds of the cotton saved and sold which,

had been apportioned to the appellee or its credit, in the distribution thereof, and retained by the assignee of the policies, not subject to any abatement or reduction, on the ground of any liability of "The Home Insurance Company of New York," and "The Associated Firemen's Insurance Company of Baltimore," or either of them, by reason of the policy issued by each to the Baltimore Warehouse Company, and outstanding at the time of the fire, to contribute to the appellants' indemnification against the loss of the said cotton or otherwise, and the prayer of the appellants, for instruction to this effect, ought to have been granted.

A liability among several insurers to contribute, exists only where they have insured the *same subject-matter* against the *same risk*,—and the loss has happened to this *common subject-matter* and within *this common risk. Flanders F. Ins.,* 36; *Angell on F. & L. Ins.,* 88 ; *Adams' Eq.,* 267.

Where nothing to the contrary appears in the terms of the policy, the subject of insurance is the interest of the person with whom the contract is in terms made, and especially where he, in fact, has an interest. *Angell on F. & L. Ins.,* 80, 81. In "The Home" and "Associated Firemen's" policies, the contract is in terms, with "The Baltimore Warehouse Company," and the Warehouse Company had an *interest* as *lien* creditor. *Act of* 1870, *ch.* 125; *Act of* 1867, *ch.* 268.

Where the party effecting the insurance has an insurable interest personal to himself in the thing, which interest he is intending to cover, if any other would, also, in addition, entitle himself to the protection on the ground that the contract was made also for his benefit, he must show : 1. That the party effecting the insurance was his agent to effect insurance for him.  2. That he was executing his agency in the fact of insuring; and 3. That, by *apt words* for the purpose, he advertised the insurer that other interests besides his own were intended to be protected, such as "for self and others," "for whom it may concern," &c.

That the Baltimore Warehouse Company had an interest in the "merchandise," described as the subject of insurance in the two policies of "The Home," and "The Associated," has been seen. That the protection of *this interest* was intended in the insurance effected by those policies is manifest from the language employed, all the terms of which carefully distinguish a *personal interest* of the Warehouse Company. "Held by them, or in trust," in the policy of "The Associated Firemen's." "Their own, or held by them in trust, or in which they have any interest or liability," in the policy of "The Home." "*Their* own," "*held by them*," describes the interest which an absolute owner has. "*In which they have any interest or liability*," describes any beneficial interest less than absolute ownership which the assured has in the thing, or any liability for its safety, &c. "*Held in trust*"—the legal estate and interest which one has as *trustee;* and this is an insurable interest. *Insurance Co. vs. Chase,* 5 *Wall.*, 509. That "goods held in storage" are not meant, especially in the policies of "The Home" and "The People's," is clear from the separate provision as to such *stored* goods in these policies.

In order that these warehouse policies should be available for the protection of any interests other than and in addition to their own:

1. There must be, in the language and terms of the contract, sufficient advertisement to the insurer of an intention to effect insurance for others also; to put him on inquiry, if he choose to make this, to ascertain who such others are. *Plahto vs. Mer. and Man. Ins. Co.,* 38 *Mo.,* 248; *Graves vs. Boston Mar. Ins. Co.,* 2 *Cranch,* 419; *Finney vs. Bedford Com. Ins. Co.,* 8 *Metcf.,* 348; *Wise vs. Mar. Ins. Co.,* 23 *Mo.,* 80; *Newson's Adm'r. vs. Douglass,* 7 *H. & J.,* 417; *DeForrest vs. Fulton Ins. Co.,* 1 *Hall,* 84. Are there any such *apt words* of advertisement in these policies? On the contrary, they studiously confine the protection to the peculiar interest of the Warehouse Company.

2. Even then, where there are such words, the contract will not cover the interest of every person who is within the letter

of the description which the words of such advertisement import, but only of those for whose protection it was in fact *intended* by the party effecting or procuring the insurance. The intention in fact, at the time, of this party comes directly in question.   *Flanders' Fire Ins.*, 375–377 *and notes; Garrett vs. Hanna*, 5 *H. & J.*, 412; *Newson's Adm'r. vs. Douglass*, 7 *H. & J.*, 417; *The Augusta Insur.* Co. vs. *Abbott*, 12 *Md.*, 373; *Steele vs. Franklin Insur. Co.*, 17 *Penn. St.*, 291; *DeBolle vs. Penna. Ins. Co.*, 4 *Whart.*, 68; *Lee vs. Adsit*, 37 *N. Y.*, 78; *Parks vs. The Gen'l. Int. Assur. Co.*, 5 *Pick*, 34; *Angell on Fire and Life Ins.*, sec. 81.

This intention of the party procuring the insurance is a question of *fact* which can only be solved by extrinsic evidence; the proof of it may be by parol; and where the declarations and representations of the party procuring, to the agent of the insurer, in the act of procuring the insurance, demonstrate this intention either way, it is competent to prove these.   The testimony, the exclusion of which is the ground of the appellants' first exception, ought to have been admitted. *Newson's Adm'r. vs. Douglass*, 7 *H. & J.*, 417; *Plahto vs. Mer. and Man. Ins. Co.*, 38 *Mo.*, 248; *Lee vs. Adsit*, 37 *N. Y.*, 78; *Parks vs. Gen'l. Int. Ass. Co.*, 5 *Pick*, 34.

3. But further, it must appear that the party procuring the insurance had authority to insure for the party claiming the benefit.   *Newson's Adm'r. vs. Douglass*, 7 *H. & J.*, 417.

This authority may, of course, be by *previous direction or request.*   There is not only no evidence of such previous authority, but it is expressly shown by the evidence that the understanding between the Warehouse Company and the appellants was, that the company would not effect such insurance.   The notice in the warehouse certificate and charter.

The authority may be by *subsequent adoption*, even *after the loss.   Garrett vs. Hanna*, 5 *H. & J.*, 412; *Newson's Adm'r. vs. Douglass*, 7 *H. & J.*, 417; *Augusta Ins. Co. vs. Abbott*, 12 *Md.*, 373.

There is no evidence in the cause of any such adoption. It does not appear that the appellants have ever paid or been charged with any *premium*, or admitted any liability therefor, or claimed any benefit of these policies. Their position on the pleadings and in the proof repudiates such a claim.

A mere *bailee* has not, as such, any authority to insure generally, and on the bailor's account, the goods bailed to him, and his act of effecting such insurance is *ultra vires* and inoperative, without proof of previous authority or subsequent adoption. *Flanders' F. Ins.*, 161.

The notice in the warehouse certificate, that the property was held by the corporation as bailees only, can only mean that the company would not, as an agent for its depositors, effect insurance elsewhere *for them*, and is intended to advertise them that they must do it for themselves.

The evidence of a special personal notice to the appellants by the president of the Warehouse Company, before the deposit by them of any of the cotton burned, that the Warehouse Company would not effect insurance on their cotton, and that they must insure it for themselves, the exclusion of which is the subject of the appellants' second exception, was competent as well to disprove the *fact of agency,* as to disprove any *intention* on the part of the Warehouse Company to cover the interest of the appellants in merchandise stored with it, in the policies it was holding, and ought to have been admitted.

The requirement in the charter that this notice shall be inserted in every certificate is equivalent to a prohibition of any such transaction as the Warehouse Company's effecting insurance.

Because the policy, issued by the appellee, on its face and at its execution provides that " the loss, if any, shall be payable to the Baltimore Warehouse Company," it is supposed that this makes the same *interest* of the same party in the cotton the common subject of insurance in all these policies, and lays a foundation for the liability to contribution. What is the effect of the entry, " Loss, if any, payable to the Balti-

more Warehouse Company?"   It is precisely the same as if the appellants had instantly, after the execution of the policy, with the consent of the insurer, and in pursuance of a previous agreement with the Warehouse Company, assigned the policy by endorsement to the company.   *Nat. Fire Insur. Co. vs. Crane*, 16 *Md.*, 260; *Brown vs. The Roger Williams' Ins. Co.*, 5 *R. I.*, 394; *Grosvenor vs. The Atlantic Fire Ins. Co.*, 5 *Duer*, 517, and 17 *N. Y.*, 391; *Flanders' F. Ins.*, 441.

Let it be granted for the present that the object of this *assignment* was to protect the *same interest* which the warehouse policies protected, that is, the interest of the company, as *lien* creditors, in the appellants' cotton, yet the insurance by the appellee was not of *that interest*, but of the whole interest of the appellants which was larger, *in fact*, than the former, direct and primary, while that was collateral and secondary, and continuing, though the former were extinguished, as by payment of the advances, &c.   *Flanders' Fire Ins.*, 441; *Nat. Fire Ins. Co. vs. Crane*, 16 *Md.*, 260.

The contract of the appellee with the appellants was for the *indemnification* of the latter against loss by fire on twenty-eight bales of cotton, and the appellants are entitled to be *fully* indemnified, unless the loss on the twenty-eight bales exceed the sum insured on them, and then to the extent of that sum, and no construction will be given to this contribution clause, which will deprive the appellants of this full indemnity.   *Balt. Fire Ins. Co. vs. Loney*, 20 *Md.*, 37.

Whatever sum "The Home" and "The Associated" shall have to pay the Warehouse Company for their indemnification as *lien creditors* against loss on the appellants' cotton, they would have a right in equity, on the principle of *subrogation*, to recover back from the appellants, as the debtors, the security for whose debt they had insured.   If the appellee's liability to the appellants is reduced or abated by reason of such contribution from these warehouse policies, the indemnification of the appellants is to that extent impaired—since he cannot recover what he would be compelled to refund.   *Flan-*

APRIL TERM, 1872. 423

Hough, Clendening & Co. *vs.* Pres. and Directs. People's Fire Ins. Co.

*ders' F. Ins. Co.*, 361; 2 *Am. Leading Cases*, 571, (*the note;*) *Ætna Insur. Co. vs. Tyler*, 12 *Wend.*, 547; *Sussex Mut. Ins. Co. vs. Woodruff*, 2 *Dutch.*, 541; *Carpenter vs. The Prov. Wash. Ins. Co.*, 16 *Pet.*, 495; 2 *Phillips' Ins.*, 419; see *Kernochan vs. N. Y. Bowery Ins. Co.*, 17 *N. Y.*, 428; 1 *Leading Cases Eq.*, 153, (*top page.*)

But, in truth, the *assignment* was not intended to protect the same interest which the warehouse policies protected. The latter were designed to cover any *deficiency* in the depositor's insurance, to protect the company's interest as *lien creditor*. *Stover vs. Elliott Fire Ins. Co.*, 45 *Me.*, 175.

*Fielder C. Slingluff* and *S. Teackle Wallis*, for the appellee.

The policies in the "Home" and "Associated Firemen's" Insurance companies were taken out in the name of the Baltimore Warehouse Company, while the policies of the appellee were taken out in the name of the appellants, "loss, if any, payable to Baltimore Warehouse Company."

The provision for the payment of the loss, if any, under the policies of the appellee at the time they were effected, and on their face to the Baltimore Warehouse Company makes the transaction at its inception one between the appellee and the Warehouse Company, and we therefore have the Warehouse Company as the proper legal contracting party to both the specific and the general or floating policies, it being the holder of both at the time of loss. This is more apparent from the testimony, which shows that at the time of the fire the Warehouse Company had actually advanced $48,720 upon the cotton of the appellants, included in which were the fifteen and thirteen bales in controversy, and the amounts insured in the appellee's policies actually belonged to the Warehouse Company. *Nat. Fire Ins. Co. vs. Crane*, 16 *Md.*, 261; *Brown vs. Roger Williams Ins. Co.*, 5 *Rhode Island*, 394.

The floating and specific policies constitute a double insurance on the interest of the Warehouse Company in the cotton

of Hough, Clendening & Co., and by their terms and effect, the policies are all in "favor of the same assured, on the same interest, in the same subject, against the same risks." 1 *Phillips on Insurance, sec.* 359; *Ætna Fire Ins. Co. vs. Tyler,* 16 *Wend.* 396; *Merricks vs. Germania Fire Ins. Co.,* 54 *Pa. State R.* 277; *Baltimore Fire Ins. Co. vs. Loney,* 20 *Md.,* 33; *London and North Western R. W. vs. Glyn,* 102 *E. C. L. R.,* 652; *Sloat vs. Royal Ins. Co.,* 49 *Penn.,* 18; *Angelrodt vs. Delaware Mut. Ins. Co.,* 31 *Mo.,* 593.

· A consignee having property of his principal in his possession and responsible for it, may, particularly if he have an interest in it for advances, &c., insure the property in his own name, and in case of loss, recover its full value, and hold the balance after paying his own claim, in trust for the owners of the property. *Story on Agency, sec.* 111; *Ætna Ins. Co. vs. Jackson,* 16 *B. Munroe,* 258; *De Forest vs. Fulton Fire Ins. Co.,* 1 *Hall,* 84; *Allen vs. Mutual Fire Ins. Co.,* 2 *Md.,* 111; *Franklin Fire Ins. Co. vs. Coates & Glenn,* 14 *Md.,* 285.

If, under the proposition above established, the Warehouse Company, under its general policies, could recover the interest of the appellants over and above their advances, &c., to them, can it be said that such a policy does not cover the interest of the appellants so as to make it a double insurance with the specific policies?

A policy taken out in the name of the consignee of goods, to cover goods, held by them in trust, or on consignment, covers the goods of a third party on the premises, and such third party has the right to recover his proportionate share of the insurance money received under such policy. *Siter vs. Morrs,* 13 *Penn. St.,* 218; *Waters vs. Monarch Fire and Life Assurance Co.,* 85, *E. C. L. Rep.,* 868; *Stillwell et al., vs. Staples,* 19 *N. Y.,* 401.

The point raised by the first bill of exceptions is one well settled by the law of evidence. The written portion of the policies, effected by the Warehouse Company in the "Home"

and the "Associated Firemen's," are direct and explicit. The "Home" policy, says "the said Company do insure the Baltimore Warehouse Company against loss or damage by fire to the amount of twenty thousand dollars, on merchandize, their own, or held by them in trust, or in which they have an interest or liability." And the policy of the "Associated" is in like terms. The appellants sought to show by parol testimony that the policies did not cover "merchandize their own, &c.," as therein stated; but was intended to cover the merchandize only under certain circumstances; and, if the said merchandize was insured by the owners thereof in other companies, that the interest of the Warehouse Company in these policies was not insured at all. This is a plain violation of the well established principle of the law of evidence "that parol evidence is inadmissible to prove the intention of a contract under seal," and "that it is inadmissible to charge or contradict the terms of a written instrument." And especially as against strangers to the instrument. *Young vs. Frost, 5 Gill,* 287; *Henderson vs. Mayhew,* 2 *Gill,* 393; *McElroy vs. Shipley, et al.,* 2 *Md.,* 25; *Hamilton's Lessee vs. Cawood,* 3 *H. & McH.,* 437; *Helm's Lessee vs. Howard,* 2 *H. & McH.,* 57.

The same principle precisely, is involved in the second bill of exceptions. The appellants there sought in effect to show by parol testimony that the floating policies of the "Home" and "Associated" were intended to cover the merchandise therein mentioned only under certain circumstances.

If such is not the effect of the evidence sought to be introduced, how can it be material to the question of contribution, whether or not the Warehouse Company notified the appellants, they would not insure their cotton? The fact is they did so insure, and this fact is established by the policies themselves. Could parol evidence be introduced to show that more was intended to be covered by the policy of insurance than was therein expressed? Clearly not. *Helm's Lessee vs. Howard,* 2 *H. & McH.,* 57.

Does not the same principle prevent parol evidence from showing that less was intended to be insured, than the policies called for? and that too, as against third parties whose rights depend upon the policy thus sought to be varied?

Another point strongly relied upon by the appellants, is that the warehouse receipts themselves contained a notice to the effect that the Warehouse Company did not insure goods stored with them.

This is in accordance with the charter of the Warehouse Company, section 10, ch. 268 of the laws of 1867, which says, every receipt shall contain on its face a notice that the property mentioned therein, is held by this corporation as bailees only, and is not insured by this corporation.

The construction sought to be placed by the appellants upon this section is erroneous. It was intended to prohibit the Warehouse Company from becoming an insurance company itself, and to protect them from liability as such, but was no restraint upon their power to insure for themselves or their bailees in other companies. It was a prohibition suggested by wise legislation in the interest of the bailees.

GRASON, J., delivered the opinion of the Court.

At the trial of this cause in the Court below, the appellants, for the purpose of showing what goods and merchandize were intended to be covered by the policies issued to the Warehouse Company by the Associated Firemen's Insurance Company and the Home Insurance Company, offered to prove by the president of the Warehouse Company that, at the time he applied for the insurances, he informed the agents of the insurance companies that he desired to obtain insurance to protect his company from loss or damage, not covered by policies taken out by those who had deposited cotton or other merchandize in the warehouse, and in which the Warehouse Company had an interest. Upon objection made by the appellees, the evidence was ruled to be inadmissible, and to this ruling the first exception was taken. When a contract

is reduced to writing and is couched in plain and unambiguous language, Courts must look to it alone to find the intention and meaning of the parties, and parol proof is inadmissible. *Balto. Fire Ins. Co. vs. Loney,* 20 *Md.,* 36; *Henderson vs. Mayhew,* 2 *Gill,* 409. There was therefore no error in the ruling of the Court below in this respect.

The appellants then offered to prove, that before the issuing of the policies sued on in this case, and before the deposit of their cotton in the warehouse, they were informed by the Warehouse Company that the latter would not insure the cotton so deposited, but that the appellants must insure for themselves, and that said notice was acquiesced in and not objected to by them, and that they did, thereupon, insure for themselves. This proof was objected to and ruled out by the Court, and this forms the ground of the second exception. We concur in this ruling as the evidence offered was totally irrelevant. Notice from the Warehouse Company that it would not insure cotton, stored in its warehouse and belonging to the appellants, was unnecessary, and could not, in any manner, affect the rights or liabilities of the parties to this suit.

The third exception was taken to the rejection of evidence offered for the purpose of showing what was meant by the insurances of the respective lots of cotton procured by the appellants.

Bernard Hough had testified that it was the habit of the appellants to take out policies on each additional lot of cotton as it came in. He was then asked to explain whether he meant to say that it was the habit of the appellants to effect insurance on each specific lot of cotton, or to effect insurance generally on an additional number of bales equal to the lot deposited. The evidence, sought to be elicited by this question, was intended to show what was the intention and purpose of the appellants in taking insurance, and the effect of the policies taken out by them; and, as we have already stated in considering the first exception, this could only be

shown by the terms of the policies which were issued. They constituted the contracts between the parties, and being free from ambiguity, parol evidence was not admissible to explain them.

The appellees' prayer, which was granted, instructed the jury that there was no proof upon which they could allow damages for any injury by fire to the cotton insured by either of the policies sued on. This prayer assumed that the policies sued on were specific as to the fifteen and thirteen bales respectively, as well as an absence of evidence to show whether the two specific lots so insured were included in the seventy-five bales, which sustained partial injury only, and were identified as belonging to the appellants, or whether they were included in the mass which was destroyed. We have no doubt that the policies are specific and not general. The appellants began to deposit cotton in the warehouse mentioned, on the 5th day of February, and continued to deposit, at intervals, until the 15th of July, 1870, only three days before the fire occurred, and for each lot deposited, received from the Warehouse Company a receipt, warrant or certificate therefor, which specified the number of bales and the date of the deposit, and also the mark on the bales, the letters X. Q. being marked on each bale deposited by the appellants. These receipts or certificates were all numbered, and that for the fifteen bales deposited on the 20th of June was numbered "1221" and the one for the thirteen bales deposited on the 27th June, was numbered "1238." Policies of insurance were at once taken out to cover the particular number of bales deposited, and on their face the loss, if any, is made payable to the Warehouse Company, and the policies and warehouse receipts were delivered to the Warehouse Company to secure advances made by it. On the policy on the fifteen bales, dated 21st of June, there is endorsed in pencil the number in figures, "1221," and on that on the thirteen bales dated 27th of June, also in pencil, "1238." It does not appear in proof by whom these numbers on the policies were en-

dorsed, but it seems clear that they were endorsed thereon for the purpose of corresponding with the number of the Warehouse receipts given for the particular cotton insured, so that the same might be more readily identified.

It is also shown that at the time of each deposit, the depositor reserved a sample of the particular lot deposited. All these facts go to show that the intention of the contracting parties was to effect a specific insurance on each particular lot of cotton as it was deposited in the warehouse. But independently of these facts, and looking to the terms of the policies alone, it is manifest that each policy is specific and covers no cotton but the specific bales to which it refers. The amount of the liability of the insurance company is limited in each policy to a specific sum, and the policies bear date on the day, or the day after, the cotton is deposited. Can it be pretended that a policy issued on the 27th of June, to cover thirteen bales deposited on that day, is to be held to cover thirteen other bales deposited long before, and which had been previously insured, or that the policy issued the 5th of February on thirty-eight bales can be said to apply to the same number of bales deposited in July thereafter, when, for aught we know to the contrary, the appellants had not on the 5th of February a bale beyond the thirty-eight bales first deposited? The true construction of each policy issued is that it covers, and was intended to cover only the specific number of bales in each deposit, and the insurance on which was effected at the time of the deposit; the policy of the 21st of June, 1870, covering only the fifteen bales deposited on the 20th of June, and the policy of the 27th of June the thirteen bales deposited on that day. But while we are of opinion that the policies sued on are specific and not general, we think that there was evidence in the cause to show damage to the cotton deposited in the warehouse on the 20th and 27th of June respectively, and covered by the policies sued on. It is true there is no evidence to show whether this particular cotton was among the seventy-five bales which were

identified after the fire, as belonging to the appellants, or was among that which was destroyed; but the proof leaves no room for doubt that it was included in one or the other class, and was damaged, if not destroyed.

It was incumbent upon the appellants, in order to recover for a total loss, to show that the cotton insured was wholly destroyed, and having failed to show this, it must be assumed. that it was only partially damaged. Proof was offered that these two lots of cotton were weighed at the time they were stored in the warehouse, the fifteen bales weighing six thousand two hundred and sixty-one pounds, and the thirteen bales five thousand four hundred and eighty-two pounds, making in the aggregate eleven thousand seven hundred and forty-three pounds, and that a fair class of "low middling" cotton was worth in the market eighteen and three-quarter cents per pound. It was also proved by Mr. Rhett, that he had examined the several samples of the cotton stored by the appellants in the warehouse, and that they graded from "good middling" to "low middling" and "ordinary," the whole averaging a fair class of "low middling," thus showing that the market value of the cotton insured, and injured by the fire, was eighteen and three-quarter cents per pound. Proof of the extent of the damage was also furnished by the list of the sales of the cotton which was partially damaged and identified, so that the extent of the loss of the appellants could have been easily ascertained by the jury. It was therefore error to grant the prayer of the appellees and thus to take the case wholly from the jury.

As we have shown that the policies sued on were specific and not general, it follows that the second and third prayers of the appellants were erroneous, and were properly rejected.

The Court below, having granted the appellees' prayer, refused the fourth prayer of the appellants as unnecessary. But as we have shown that the appellees' prayer ought not to have been granted, because there was evidence of loss upon which the jury should have been permitted to pass, the appel-

lants' fourth prayer ought to have been granted, as it states the correct measure of damages to be recovered.

The appellants' first prayer asked an instruction that the jury are not to make any abatement from the damages, (if the verdict should be for the plaintiffs) on account of the two policies of insurance by the Home Insurance Company, and the Associated Firemens' Insurance Company, to the Baltimore Warehouse Company.

The policies in the " Home " and "Associated Firemen's " companies were taken out by the Baltimore Warehouse Company, while the policies in the company of the appellees were issued to Hough, Clendening & Co., loss, if any, payable to the Baltimore Warehouse Company. In the case of *The Nat'l Fire Ins. Co. vs. Crane,* 16 *Md.,* 293, a policy had been issued to James L. Gray & Bro. against damage by fire to property in Baltimore city, " the loss, if any, payable to William Crane & Co.," and the Court of Appeals held that this language was an admission that Crane & Co. had an interest in the contract and were to receive the benefit of it, and that the policy might be regarded as having been, at its inception, assigned to them with the assent of the company. See also *Brown vs. The Roger Williams Ins. Co.,* 5 *Rho. Isl. R.,* 394. In the case before us, the proof shows that the Warehouse Company had advanced to Hough, Clendening & Co. over forty-eight thousand dollars upon the cotton belonging to them and stored in the warehouse, and the Warehouse Company had therefore a lien upon it for such advances, as well as for storage, which constituted an insurable interest in the cotton. The policy in the Associated Firemen's Company was for ten thousand dollars, and insured the Warehouse Company against loss by fire for one year " on merchandize generally, hazardous or extra-hazardous, held by them or in trust, contained in that part of No. 2 Warehouse, used by them, &c., to cover whilst on the street or pavement around said warehouse." The policy in the "Home" Company is nearly in the same language, but is for twenty thousand dollars, and " on merchandize, hazardous or extra-

hazardous, their own, held by them in trust, or in which they have an interest or liability." In the policies to the appellants, as well as to the Warehouse Company, are stipulations that, in case of loss, the insured shall not recover any greater proportion of the loss or damage sustained to the subject insured, than the amount thereby insured shall bear to the whole amount insured.

The law seems to be well settled that a person having goods in his possession as consignee, or on commission, may insure them in his own name, and, in the event of loss, recover the full amount of the insurance, and, after satisfying his own claim, hold the balance as trustee for the owner. *Story on Ag.*, sec. 111; *Ætna Insur. Co. vs. Jackson & Co.*, 16 *B. Munroe*, 258; *DeForrest vs. Fulton Insur. Co.*, 1 *Hall*, 126; *Lee vs. Adsit*, 37 *N. Y. Rep.*, 90; *Waters vs. Assur. Co.* 85 *E. C. L. Rep.*, 879; *London and North West. R. W. Co. vs. Glyn*, 102 *E. C. L. Rep.*, 660; *North British Insur. Co. vs. Moffitt*, *Law Rep. for Jan.*, 1872, *p.* 31; *Siter, et al. vs. Morrs*, 13 *Penna. State Rep.*, 219.

The policies issued to the Warehouse Company by the "Home" and "Associated Firemen's," cover not only the property belonging to the Warehouse Company, but also all which was held by it in trust or in which it had an interest. By goods "held in trust" are meant goods with which the assured is intrusted; "not goods held in trust in the strict technical sense—so held that there was only an equitable obligation in the assured, enforcible by a *subpœna* in chancery—but goods with which they were intrusted, in the ordinary sense of the word." *Waters vs. Assur. Co.*, 85 *Eng. C. L. Rep.*, 879. It seems clear therefore that the cotton of the appellants was insured by the two policies issued to the Warehouse Company, and that it can recover not only to the extent of its interest in the property insured, but to the extent of the loss, unless the right of recovery to that extent is limited by some provision or condition of the policies. The policies sued on having on their face been made payable to the Ware-

house Company, they inured to the benefit of that company, and may be considered as in favor of the same assured, on the same interest in the same subject, and against the same risks, as the policies which were issued directly to the Warehouse Company by the " Home " and "Associated Firemen's " companies. They are therefore what are termed double policies, (*Sloat vs. Royal Ins. Co.*, 49 *Penna. State Rep.*, 18,) and the insurance companies issuing them are bound to contribute their respective proportions of the loss.   *Merrick vs. Germania Fire Insurance Company*, 54 *Penna. State Rep.*, 282 ; *Flanders on Fire Insurance*, 40 ; *Ætna Fire Insurance Co. vs. Tyler*, 16 *Wend.*, 396, 400 ; *Baltimore Fire Insurance Co. vs. Loney*, 20 *Md.*, 38. The appellants' first prayer was therefore properly refused.

As the Court below erred in granting the appellee's prayer, and in rejecting the fourth prayer of the appellants, the judgment appealed from must be reversed, and a new trial awarded.

<div style="text-align:center">

*Judgment reversed and*
*new trial awarded.*