FERGUSON, *Interpleader*, v. THE PEKIN PLOW COMPANY et al., *Appellants;* HAMILTON CARRIAGE COMPANY et al., *Respondents.*

Division Two, October 22, 1897.

1. Insurance: DEFINITION OF "IN TRUST." A commission merchant insured all wagons, implements, etc., owned by him or *held by him in trust* or on commission. The words *in trust* are held to include those goods with the care of which the commission merchant was intrusted and not a trust in the technical sense enforcible in equity.

2. ——: SHIFTING OR FLOATING POLICIES. Policies of insurance taken out by a commission merchant to cover goods on hand and those to arrive from time to time are termed shifting or floating policies of insurance. Such policies contravene no sound principle of law and are open for the adjustment of the loss according to the value of the goods actually destroyed.

3. Insurance : RIGHT OF AGENT TO INSURE IN HIS NAME. Agents, wharfingers, warehousemen, commission merchants, and those having the custody of and being responsible for property of their principals or consignors, may insure such property in their own names and may recover in their own names the full amount of the policy or policies up to the value of the property.

VOL. 141 mo—11

4. **Insurance Policy:** PAROL TESTIMONY. A policy of insurance, constituting the contract between the insurance company and the insured, being plain and unambiguous, parol testimony is not admissible to vary its effect by showing that the commission merchant had no intention of insuring the goods held by him on commission.

5. **Insurance:** AGENCY : RATIFICATION AFTER LOSS. If one acting as agent without previous authority makes a contract for the benefit of another, the latter may at any time afterward, while the contract is in force, adopt and ratify the act and receive the benefits as fully as if express authority had been given to make the contract. And it is *held* that if a commission merchant without authority insures goods, held by him to be disposed of, the owner may ratify within a reasonable time *after the loss* occurs as well as before.

6. **Insurance:** FACTOR. A commission merchant took out floating policies of insurance on all goods held by him on commission. At that time he held the goods of two companies with whom his contract required that he should insure those goods to their full value. At the time of loss he held, besides some of these goods, others of different companies on which he was required to keep no insurance. None of the companies had notice of the insurance prior to the loss, but all afterward ratified his acts and made proof of their loss. *Held*, that the principals should share *pro rata* in the insurance and that the two companies, by reason of the contract to have their goods insured to their full value, were not entitled to a preference and to have their claims satisfied in full.

### Appeal from Jackson Circuit Court.

AFFIRMED.

*Harkless, O' Grady & Crysler* for appellants.

(1)    Here is a proposition which in our judgment states the equity of this case, to wit: That the Grain Drill, Minneapolis Company and Deuscher Company have such right to share in these proceeds as Ferguson had, and no other; their equity to share is founded upon the equitable right that they have as against Ferguson; they enter the equitable arena, basing their rights upon the relation that exists between themselves and Ferguson, and can of course have no greater right

as against the other three insured companies than Fer-
guson possessed, and Ferguson as a matter of law and
right could not share with the three insured companies,
for three reasons: *First.* He had contracted to take
out the insurance and to insure for the full value, and
having not done so, he in equity must allow them to
take what there is. *Second.* He would have been
personally liable over to these three insured parties
under his agreement for the difference between the
insurable value and the amount of the policies. *Third.*
The three insured companies had an equitable lien on
the proceeds, and the other three companies have not,
but simply have a right as general creditors against
Ferguson. The following case clearly states this prop-
osition: *Bank v. Benson*, 24 Pick. (Mass.) 204. That
Ferguson was a trustee of an express trust of the fund,
for the benefit and to the use of the three parties he
had agreed with to insure, is decided by *Shaw v. Ins.
Co.*, 49 Mo. 581.

*Porterfield, Pence & Webster* and *James W. Garner*
for respondents.

(1) The policies of insurance covered the goods
of all the defendants. They were shifting policies and
covered all goods on hand within the description,
though none of them may have been on hand at the
time of the delivery of the policies. *Waring v. Ins.
Co.*, 45 N. Y. 613; *Hough v. Ins. Co.*, 36 Md. 398;
*Lucas v. Ins. Co.*, 23 W. Va. 258. (2) When the
goods of all the defendants were taken into account
and their value itemized and proven in making claim
of loss by the plaintiff to the insurance companies and
the collection of the insurance money made upon the
basis of such proof, the defendants became entitled to
share in proportion to the value of their goods in the

fund which represented and constituted the product of property whereof they were the owners. *Beidelman v. Powell*, 10 Mo. App. 280; *Siter v. Morrs*, 13 Pa. St. 218; *Stillwell v. Staples*, 19 N. Y. 401; *Durand v. Thouron*, 1 Porter (Ala.), 238; *Watkins v. Durand*, 1 Porter (Ala.), 256; *Millenberger v. Beacom*, 9 Barr (Pa. St.), 198. (3) It is immaterial that defendants did not know of the insurance until after the fire. Their subsequent ratification was sufficient. *Beidelman v. Powell, supra; Stillwell v. Staples, supra; Millenberger v. Beacom, supra.* (4) The policies taken out by Mr. Ferguson unquestionably covered the goods of all the defendants. This is their plain legal effect. But parol evidence is not admissible to contradict the terms of the policies. *Hough v. Ins. Co., supra; Lucas v. Ins. Co., supra.*

GANTT, P. J.—This is a suit in equity begun by the filing of a petition, in the nature of a bill of interpleader, by G. J. Ferguson, one of the respondents against the two appellant companies and all the other respondents. The petition was verified by respondent Ferguson, and the prayer thereof was that the court make an order requiring the defendants and each of them to interplead so that the court might adjudge to whom certain funds held by him belonged, and order distribution thereof in accordance with the rights of the parties. Upon the petition of plaintiff, and the answer and cross petitions of defendants, and the evidence, the court rendered the decree from which the defendants, the Pekin Plow Company and the T. & H. Smith & Company, alone appeal.

The case made by the pleadings and evidence was as follows:

The plaintiff, G. J. Ferguson, was at and prior to the time the controversy herein arose, a commission

merchant engaged in Kansas City, Missouri, in selling agricultural implements on commission, and all of the defendants were and are manufacturers and dealers in agricultural implements, and plaintiff was the agent of said defendants and each of them to sell the goods of said defendants on commission.

On January 18, 1893, he took out certain policies of insurance, one for the sum of $5,500 in the Mutual Fire Insurance Company of New York, and one for $2,500 in the German Insurance Company of Quincy, Illinois. The policies were taken in his own name and the goods were described in each of the policies as follows: "On his stock of plows, cultivators, horse rakes, reapers, mowers, road scrapers, threshing machines, horse power corn shellers, cider mills, sorghum mills and evaporators, churns, feed cutters, wagons, buggies, carriages, fanning mills, drills, pumps and pump pipes, engines, belting, fence wire, and extras and parts of foregoing articles; also such other articles as are usually kept in an agricultural and farming implement warehouse, carriage and harness repository and commission house, their own or held by them in trust or on commission, or sold but not removed; all while contained in the five story and basement brick, composition roof building, situate 1004, 1006 and 1008 Santa Fe street, Kansas City, Missouri, and on platforms and in cars on side tracks adjacent to said building."

At the time of taking out the policies, the plaintiff was representing as agent only the following named defendants: H. P. Deuscher Company, Minneapolis Threshing Machine Company, Pekin Plow Company, and the T. & H. Smith & Company; but shortly afterward he entered into contracts to handle the goods of the following named defendants: The Hamilton Carriage Company and the Spring Grain Drill Manufacturing Company.

At the time of the fire, which happened November 18, 1893, he had goods on hand of all of the defendants in the following amounts, to wit: Pekin Plow Company, $4,041.74; T. & H. Smith & Company, $3,215.07; the H. P. Deuscher Company, $2,760.63; Hamilton Carriage Company, $914.48; the Spring Grain Drill Mfg. Company, $1,611; Minneapolis Threshing Machine Company, $930.97. Plaintiff also had property of his own amounting in value to $863.

All of the above described property belonging to defendants and plaintiff was totally destroyed by the fire. Immediately upon the happening of the fire, and in accordance with the terms and conditions of said policies of insurance, plaintiff reported said loss to said insurance companies making an inventory of the said property destroyed, and stating the quantity and value of said property and the ownership thereof by plaintiff and defendants, as heretofore stated; and also shortly afterward notified all the defendants of the fire and loss of their property, and requesting them to make affidavits to the amount and value of their goods on hand with him and destroyed by the fire; and also a statement as to whether there had been any other insurance on the goods. All of the defendants complied with the request of plaintiff, and rendered sworn statements to plaintiff as requested; and within sixty days after the fire, plaintiff rendered a statement to the insurance companies signed and sworn to by him, stating his knowledge and belief as to the origin of the fire and the interest of plaintiff and of said defendants in the property destroyed, and the cash value thereof as sworn to by defendants in accordance with conditions of the policies. The proofs of loss, amounting in the aggregate to $14,336.89, were accepted by the insurance companies, and the whole amount of the insurance secured by the policies, to wit, the sum of

$8,000, was adjusted and paid by the insurance companies upon the proofs of loss so made by plaintiff. It does not appear that any of the defendants knew of the existence of the policies of insurance taken out by the plaintiff, Ferguson, until they were notified of the fire; but it was shown that all of the defendants, immediately upon being informed of the insurance, ratified the act of plaintiff, Ferguson, in taking out the policies and the making of the proofs of loss in the manner in which they were made by Ferguson. Upon the claim, however, of the Pekin Plow Company and the T. & H. Smith & Company, that their losses should be paid in full out of the funds received from the insurance companies by Ferguson, and the objection and resistance to such claim by all of the other defendants, the plaintiff, Ferguson, filed his petition as aforesaid asking that the rights of all the parties in the fund be determined by the court, and distribution made in accordance with the rights of the parties. Upon the hearing of the cause the court ordered and decreed that distribution of the fund should be made *pro rata* among all the parties, both plaintiff and defendants, whose goods had been destroyed by the fire and the amount and value of which had been proven and taken into account in the adjustment with the insurance companies, and in making the proofs of loss upon which the insurance money was paid. It further appeared in evidence that it had been agreed by the defendants that the plaintiff should share *pro rata* in the fund.

The contracts of the several defendants with plaintiff for the sale of their goods were put in evidence and it appeared that in the contracts of three of the defendants with plaintiff, to wit, the Hamilton Carriage Company, the Pekin Plow Company and the T. & H. Smith & Company, there was a clause requiring the

plaintiff to keep the goods of said defendants insured for their full insurable value.    By reason of that clause in the contracts, the Pekin Plow Company and T. & H. Smith & Company claimed below and now claim on appeal, that they should be paid the amount of their loss in full out of the funds derived from the two policies of insurance to the exclusion of all the other defendants.    It was found, however, as a fact by the court, and is recited in the decree, that the plaintiff, Ferguson, did not perform the contracts with the defendants above named so far as related to his covenant to insure; that the insurance actually taken out by him as evidenced by the two policies of insurance above referred to, were taken out for the benefit of all the parties whose goods he was handling as a commission merchant, and were intended to cover, and did cover, the goods of all the defendants; that the policies taken out by plaintiff were shifting policies and covered not only the goods held by plaintiff as a commission merchant at the time the policies were delivered and belonging to the defendants with whom plaintiff was then dealing, but covered all the goods of the other defendants coming within the description contained in the policies, and subsequently added to the stock. It was further shown by the evidence and by the policies that they covered goods not handled by the plaintiff for the appellants, but such as were handled by him for the respondents only.

I.   Did the fact that the Pekin Plow Company, and T. & H. Smith & Company, H. P. Deuscher & Company and Hamilton Carriage Company inserted a clause in their contracts with interpleader requiring him to insure their goods, which he was to sell on commission, to their full value, entitle them to be paid in full out of the fund realized on the policies described under the foregoing facts?  Stated somewhat differently,

can it affect the rights of the other companies whose goods were clearly covered by the policies and upon the loss of which the insurance companies actually paid this fund to Ferguson, that he violated his contract with the two appealing companies? We think most clearly not. That they may have recovered in another form against the interpleader, can not deprive the respondent companies of a fund which was provided for their protection. This conclusion is fortified by the policies themselves, the language of which has often been construed. *They cover by their terms all the stock, first,* owned by the interpleader, *second,* all the stock of agricultural implements, carriage and wagons, etc., *"held by him in trust or on commission."* The words "in trust" mean those goods with the care of which the interpleader was intrusted, not a trust in the technical sense enforcible in equity. *Stillwell v. Staples,* 19 N. Y. 401; *Lucas v. Ins. Co.,* 23 W. Va. 258, and cases cited.

That the interpleader held the goods of all the respondents in his possession and for sale on commission stands admitted. The facts leave no doubt whatever that the policies cover the particular classes of goods which the interpleader held for the respondents and that the appellants did not have such goods in his warehouse. It is thus apparent that the fund was in large part derived from the insurance on goods which the appellants did not own and in which they had no insurable interest. But much stress is laid upon the fact that when interpleader took out the policies he did not have in stock the goods of the Hamilton Carriage Company and the Spring Grain Drill Manufacturing Company, but it is obvious that the policies are shifting or floating policies. Such policies contravene no sound principle of law and are peculiarly adapted to those cases in which the risk is constantly changing. Such

policies are open for the adjustment of the loss accord-
ing to the value of the goods actually destroyed.   So
in this case the insurance was written to cover certain
classes of property which it is plain Ferguson contem-
plated having in stock and which he would either own
in his own right or have for sale on commission.   The
mere fact that he did not have the particular articles
on hand at the issuance of the policy did not in the
least affect the rights of respondents who afterward
consigned to him and placed in his possession goods of
the identical character which his policies covered.
Nothing is better settled than that agents, wharfinger,
warehousemen, commission merchants and others hav-
ing the custody of and being responsible for property
of their principals or consignors may insure such prop-
erty in their own names and may in their own names
recover not merely to the amount of their commissions
or charges on such property, but the full amount of the
policy up to the value of the property.  *Hough, Clenden-
ing & Co. v. Ins. Co.*, 36 Md. 398; *Waters v. Assurance
Co.*, 85 E. C. L. Rep. 879; *London & N. W. R. W. Co.
v. Glyn*, 102 E. C. L. Rep. 660; *Waring v. Ins. Co.*, 45
N. Y. 606.   So that while Ferguson, the interpleader,
was under express contracts with the appellants and
other of his customers to insure their goods, he was
none the less authorized and empowered to insure any
and all other goods committed to him for sale by his
other principals and their rights depend, not on what
he agreed to do for others, but what he actually did for
them, and we have seen that the policies cover the
goods of those who had not stipulated for insurance as
well as those who did.

But it is further urged that he did not intend to
insure any goods but those belonging to parties with
whom he had contracts at the date of the issuing of the
policies.   This contention is predicated upon an answer

made by Mr. Ferguson to counsel for appellants during his examination, in these words: "Well, at the time I took out the policies it would be those firms, I suppose, I had contracts with." Upon this answer is built the claim that Ferguson, being under contract with those companies, only intended to secure them, but this is not a fair inference from his testimony. He had already testified that he took out the policies to protect himself and the property of the firms that he was doing business for or with. But the mere fact that on that particular day these were all the parties for whom he held goods, would not and did not destroy the policy as to goods which he subsequently received of the class covered by his floating policies. The learned trial court found that not only the language of the policies covered the respondent's goods, but from Ferguson's testimony that he intended to protect the parties whose goods he was handling, and respondent's were included. His subsequent conduct in notifying all the parties and in making proofs for all leaves no doubt of what his intention was.

While we fully concur with the court in so finding, we do not think it was competent to show his intention *aliunde* the stipulations of the policies. The policies were plain and unambiguous and constituted the contract between the insurance companies and Ferguson and parol evidence was not admissible to vary their effect by showing he had no intention of insuring the goods of parties he held on commission. *Hough, Clendening & Co. v. Ins. Co.*, 36 Md. 398; *Ins. Co. v. Loney*, 20 Md. 20, *loc. cit.* 36. The intentions of Ferguson and the insurance companies must be gathered from the words of the contract which are plain and need no parol or other evidence to elucidate them.

But again it was urged in the oral argument and in the briefs that the respondents knew nothing of the

taking out of the policies before the fire occurred. This is true, but neither did the appellants. But it is wholly immaterial that they did not. It is an old and familiar doctrine that when one acting as agent, although without previous authority, makes a contract for the benefit of another, the latter may at any time afterward, while the contract is in force, adopt and ratify the act and thus entitle himself to all its benefits as fully as if he had given express authority to make the contract. A contract of insurance is no exception to this general rule. And it has been ruled that one for whose benefit insurance has thus been written may ratify it within a reasonable time after the loss occurs as well as before. *Watkins v. Durand*, 1 Porter (Ala.), 251; *Stillwell v. Staples*, 19 N. Y. 401; *Miltenberger v. Beacom*, 9 Pa. St. 198; *Beidelman v. Powell*, 10 Mo. App. 280; *Railroad v. Glyn*, 1 El. & El. 652; *Waring v. Ins. Co.*, 45 N. Y. 606. As soon as advised of the loss and that their property had been insured by Mr. Ferguson for their benefit, the respondents and appellants each at once ratified his conduct in so doing and immediately their right to share *pro rata* under said policies became fixed by law. It was no longer in the power of Mr. Ferguson or the appellants to deprive respondents of the right secured by the contract of insurance. Whatever right appellants may have to sue Mr. Ferguson because he did not insure their property, it is plain that in this case respondents were insured by the two policies and are entitled to share in the fund brought into court as the proceeds of those policies.

To permit appellants to appropriate the fund until their losses are adjusted in full to the exclusion of the other companies whose goods were made the basis of the recovery of the fund from the insurance companies, would be unconscionable and a great injustice to the respondents and the insurance companies, because it is

obvious that the burning of their goods constituted the loss within the terms of the policies, and upon the proofs they made the companies adjusted the loss.   To allow appellants to recover for the loss of goods they never owned would be a fraud upon respondents and the insurance companies.   Mr. Ferguson was agent for both respondents and appellants.   He insured for the benefit of all.   He made the proofs for all, and received the fund for all.   The policies covered all the property and each is entitled to equal protection under them. .

The judgment of the circuit court was manifestly right in law and equity, and it is affirmed.   SHERWOOD and BURGESS, JJ., concur.