## HUSCH BROS., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

### Docket No. 7591. Promulgated April 26, 1927.

At the time of a fire petitioner had on hand certain merchandise belonging to itself and certain other merchandise as bailee or warehouseman for customers. Insurance policies taken out by petitioner covered both classes of merchandise. An amount was set aside or held as a reserve, to meet customers' claims the amount of which were unknown and undeterminable. About two and a half years later the amount so set aside was reported as income. *Held,* that the amount was income in the year in which received and not in the subsequent year.

*Maurice W. Stoffer, Esq.*, and *Miller P. Firestone, Esq.*, for the petitioner.

*Henry Ravenel, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes in amount of $5,237.43 for the fiscal year ended January 31, 1920. The deficiency results from the respondent including in petitioner's income an amount of $8,982.06, representing a portion of the proceeds from fire insurance policies and from salvaged merchandise paid to petitioner during its fiscal year 1920.

### FINDINGS OF FACT.

During the taxable year under consideration, petitioner was engaged in the business of operating a retail store in St. Paul, Minn. It sold ladies' ready-to-wear goods.

In connection with its retail trade, petitioner stored for its customers fur garments, fur-trimmed garments and any other articles of clothing that its customers desired to store. Upon accepting apparel for storage, the petitioner issued to the customer a storage receipt which contained a provision that the petitioner would keep the goods of the customer insured against loss by fire. Most of the stored garments were deposited in the spring and withdrawn in the fall.

Petitioner in the operation of its retail business, in addition to selling for cash, had certain customers to whom it sold merchandise on credit. Frequently such customers after making a purchase would leave it with petitioner for alteration or remodeling.

The petitioner had certain other customers to whom it would not extend credit. These customers would make a selection of merchandise, make a partial payment thereon, and petitioner would then put the goods aside. It carried such goods in a special account and held them until the customer completed payment. This class of business petitioner designated as "Will-call" or "C. O. D." business.

A fire occurred in petitioner's establishment on the night of May 23, 1919. While the walls and some of the lower floors remained, the entire stock of merchandise, together with that in storage, that left for alterations, and that on which partial payments had been made was almost totally destroyed. Only a portión of it was salvaged.

Petitioner's records except certain of those that were in a vault were partially destroyed. The records relating to articles in storage, articles left for alterations and those held under partial payments were destroyed, and petitioner had no means of ascertaining the amount of goods in these classes which were held by it. After the fire the only information available from petitioner's records as to any of these classes of goods was the total balance due on all the goods held under partial payments.

The petitioner carried fire insurance upon its merchandise and that of others held by it. The same policies covered both classes of merchandise. The policies contained no statement as to what portion of the insurance represented insurance on merchandise of the petitioner and what portion represented insurance on merchandise of customers.

During petitioner's taxable year ended January 31, 1920, a settlement was made with the insurance companies by which petitioner received the full amount of the insurance policies, $102,500 and $6,657.75 from the salvaged merchandise. The amounts received from the insurance companies, the amount received from salvage, and two other small amounts were credited by petitioner to an account called "Insurance Recovered Merchandise," which it had set up on its books.

For about ten weeks following the fire, petitioner was out of business. However, immediately after the fire, it established an office in a nearby building, to which some of its customers who had goods in storage, or who had left goods for remodeling, or had made partial payments on goods they had selected, came to have adjustments made.

During the remainder of petitioner's taxable year and down to about May, 1921, it continued to make adjustments with customers for losses resulting from the fire.

Some adjustments were made by furnishing the customers with new merchandise which was taken directly out of stock. Other adjustments were made by allowing credit on the customer's account and others were made by the payment of cash. Subsequent to the closing of petitioner's taxable year, January 31, 1920, no cash adjustments were made with customers. Where payments were made in cash, the amounts were charged against the account "Insurance Recovered Merchandise" to which was also charged the balance of petitioner's merchandise account at the time of the fire, the balance due from customers on will-call or C. O. D. business at the time of the fire and the amount of invoices for goods received prior to but not entered on the books at the time of the fire. At the close of the petitioner's taxable year, January 31, 1920, the "Insurance Recovered Merchandise" account had a credit balance of $10,122.06.

The officers of petitioner after conferring among themselves and with petitioner's attorney and its accountant, decided to treat the amount as a reserve for liability on account of claims that had not yet been settled and which might arise in the future. No adjustment was made in the "Insurance Recovered Merchandise" account at the end of the petitioner's taxable year, and no part of the credit balance shown therein was reported as income. During the fiscal year ended January 31, 1921, the "Insurance Recovered Merchandise" account was charged with an item of $1,140, reducing the credit balance of $8,982.06 on January 31, 1921. No part of the amount of $8,982.06 was reported as income in petitioner's return for its taxable year 1921.

While some adjustments were made with customers during the year 1922 by the delivery of merchandise out of stock, no cash payments were made. Petitioner did not report any part of the $8,982.06 as income for its taxable year 1922, but by an entry under date of January 28, 1922, transferred the amount from the "Insurance Recovered Merchandise" account to an account designated "Reserve from Insurance Recovered." By an entry dated December 16, 1922, this latter account was closed and the amount of $8,982.06 was transferred to surplus. Petitioner in its return for the taxable year ended January 31, 1923, reported the amount as income. The respondent has included it in petitioner's income for the taxable year ended January 31, 1920.

OPINION.

TRAMMELL: The parties have presented only one question for our decision and that is whether the amount of $8,982.06 was income

in that year or in the fiscal year 1923 when the petitioner claims the amount was actually realized as income upon the termination of its liability as bailee or warehouseman. In other words the question is whether the amount was taxable income in the fiscal year 1920 or 1923. No other issue is presented or argued. The insurance policies taken out by petitioner, while having a clause covering the merchandise of customers in the hands of petitioner, did not show what part of the face of the policy represented insurance on petitioner's merchandise and what part represented insurance on customers' merchandise.

The petitioner did not know the extent of its liability to customers for merchandise destroyed in the fire, and had no means of accurately determining such amount. After charging against the receipts from insurance policies and from salvaged merchandise and certain other minor sources, certain amounts representing as nearly as could be determined the merchandise on hand belonging to petitioner at the time of the fire, the balance due on C. O. D. and will-call merchandise held by petitioner and cash payments made to customers as a result of adjustments, the petitioner held the remainder as a reserve out of which to make payments to customers as further adjustments were found necessary. The credit balance remaining on January 31, 1920, was $10,122.06.

After that date, no further cash payments were made to customers but their losses were adjusted either by allowing a credit to their accounts or by furnishing them with new merchandise. The only other charge made against the credit balance of $10,122.06 was an amount of $1,140 made on February 28, 1920, and after that date the balance stood at $8,982.06. The petitioner carried the undiminished balance on its books until December 16, 1922, when it was transferred to surplus, and in its return for the year ended January 31, 1923, reported the amount as income.

With respect to the customers' goods the petitioner was in the position of bailee or warehouseman, and customers were entitled to collect from the petitioner whatever amount it had received as insurance on their goods in excess of any charges it was entitled to against the customer. The amount received by the petitioner in excess of its charges, if any, was the property of the customers, which petitioner held as trustee. 3 R. C. L. 108; *Ferguson* v. *Pekin Plow Co.*, 141 Mo. 161; 42 S. W. 711; *Fish* v. *Seeberger*, 154 Ill. 30; 39 N. E. 982; *Southern Cold Storage & Produce Co.* v. *Dechman (Tex.)* 73 S. W. 545. Consequently, such amount, or any part of it set aside or held as a reserve from which to make payment to customers for their losses as such became known to the petitioner, is in a different class from reserve set aside out of profits to meet contingent liabilities. The liabilities here were not contingent.

Such amount as was received from insurance on goods belonging to others belonged to the persons who owned the goods. The petitioner received it only in a fiduciary capacity. The fact that it was not paid out until later is not material.

The difficulty here, however, is lack of evidence as to the amount of money which the petitioner actually received in such capacity. It did not make any cash disbursements after 1921. We do not know whether the charge of $1,140 made in 1921 was a cash disbursement or not, but that fact is not material here. While we do know that adjustments were made with customers after 1920 and also after 1921, there is no evidence as to the nature thereof or the amounts, if any, finally determined to be due to customers on account of the fire loss. Any amounts due them did not belong to the petitioner but we can not find what portion, if any, of the amount of $8,982.06, the amount finally reported as income by the petitioner, was ever paid or credited to customers, to what extent the petitioner was liable to make adjustments with respect thereto, or what part of that amount represented money which should have been paid to customers on account of their losses. In view of this fact we must hold that the amount of $8,982.06 was income to the petitioner in its fiscal year ended January 31, 1920, the year in which it was received by it, and not in 1923.

The reserve set up by the petitioner is not deductible. *Appeal of William J. Ostheimer*, 1 B. T. A. 18; *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79; *Appeal of Uvalde Co.*, 1 B. T. A. 932; *Appeal of Morrison-Ricker Mfg. Co.*, 2 B. T. A. 1008; *Appeal of Helvetia Milk Condensing Co.*, 5 B. T. A. 271; *Crescent Cotton Co. v. Commissioner*, 5 B. T. A. 850.

This disposes of the only issue presented by the pleadings, or in the argument of counsel.

*Judgment will be entered on 15 days' notice, under Rule 50.*