233 S.W.2d 797 (1950)
GRAHAM et al.
v.
GARDNER et al.
No. 21395.
Kansas City Court of Appeals, Missouri.
October 2, 1950.
*798 Allan M. Fisher, Kansas City, for appellants.
Sam Mandell, Kansas City, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel for respondent.
BOUR, Commissioner.
This is a proceeding in garnishment in aid of an execution issued on a judgment *799 of the circuit court of Jackson County. F. J. Graham and Kathryn Graham are the plaintiffs and judgment creditors, while Utilities Insurance Company, a corporation, is the garnishee of C. Newt Gardner and P. Lewis Gardner, the defendants and judgment debtors in the original action.
The minor son of plaintiffs was killed in an automobile accident August 21, 1939, the car involved being driven by one Robert Jones, an employee of defendants. On June 6, 1941, plaintiffs obtained a judgment for $1500.00 and costs against defendants on account of the death of their son. Execution was issued against defendants and returned nulla bona, and a summons in garnishment was issued and served upon Utilities Insurance Company. Interrogatories were duly filed by plaintiffs and answered by the garnishee. Plaintiffs then filed their denial of the garnishee's answer, and the garnishee replied thereto. The principal issue raised by the pleadings was the question of the liability of the garnishee upon a certain policy of liability insurance theretofore issued to defendants by the garnishee, which policy was in force on the date of the accident. A trial before the court without a jury resulted in a judgment in favor of the garnishee and against plaintiffs; and, following the refusal of their motion for a new trial, the plaintiffs duly appealed.
All of the evidence in this case was offered by the plaintiffs.
The record shows that defendants operated several drug stores in Kansas City, Missouri, and employed boys who drove their own cars in making deliveries for the stores. Defendants placed an order for automobile liability insurance covering their delivery operations with their agent, H. W. Eddy Insurance Inc., of St. Louis, Missouri. The policy in question, which the Eddy Agency obtained through the garnishee's general agent at St. Louis, the Cobb-Walsh Insurance Agency, contained the following provisions: The insurer (garnishee herein) agreed "to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile." Under Item 4 of the policy, "Description of the Automobile," the following appeared: "Non-Ownership Automobile Policy covering private passenger automobiles * * * owned or operated by employees of the Named Insured (See Endorsement Attached)." The "Non-Ownership Automobile Liability Endorsement" attached to the policy provided: " * * * it is agreed that this policy, subject to its limitations, covers the liability as defined in the policy of the Named Insured only, for damages arising out of accidents resulting from the operation in the business of the Named Insured of any automobile * * *, by any person named in the schedule of this endorsement. (Italics ours.)
The only employees named in the schedule were Dorsey Gillespie and James Elbert Canada. As stated, the employee involved in the accident was Robert Jones who was driving his own car at the time. Defendant C. Newt Gardner, who testified by deposition as a witness for plaintiffs, said that on the day before the accident Robert Jones was employed by defendants to work one week while Dorsey Gillespie was on his vacation; and that on the day after the accident the defendants sent a notice to the Eddy Insurance Agency at St. Louis, which notice stated that Robert Jones had been employed on August 20, 1939, to work "vacation relief for Dorsey Gillespie for one week." The notice was by postal card, postmarked Kansas City, Missouri, August 22, 1939. On the same day, the defendants posted a letter addressed to the Eddy Insurance Agency, wherein it was stated that Robert Jones had been employed for one week to replace Dorsey Gillespie, and that Jones was involved in an accident on August 21, 1939. On August 23, 1939, the garnishee received a letter from the Eddy Agency which stated that Robert Jones had temporarily replaced Dorsey Gillespie on August 20, 1939, and attached thereto was a copy of defendants' *800 letter to the Eddy Agency dated August 22, 1939. The garnishee did not endorse the name of Robert Jones on the policy. After making an investigation, the garnishee, by a letter to defendants dated September 1, 1939, denied liability under the policy on the ground that "Robert Jones, the party who was involved in the accident, was not listed on our records as a driver for the company. We found further that no request for coverage on a car driven by Jones had been made until after the occurrence of this accident." On September 1, 1939, eleven days after the accident, the garnishee cancelled the policy.
The plaintiffs contend that "the policy in question was in force at the time of the casualty in question, and covered the casualty, never having been cancelled, suspended, avoided or forfeited." The law governing the construction of written contracts of insurance is well settled. Unequivocal language must be given its plain meaning. If the language is plain and unambiguous there is no occasion for construction, and it must be given effect unless contrary to public policy or positive law. Walker v. General American Life Ins. Co., Mo.Sup., 141 S.W.2d 785, 787; Prange v. International Life Ins. Co., 329 Mo. 651, 661, 46 S.W.2d 523, 526; Ray v. Mutual Benefit Health & Accident Ass'n, Mo.App., 220 S.W.2d 622, 625; State ex rel. Mutual Benefit, Health & Accident Ass'n v. Trimble, 334 Mo. 920, 925, 68 S.W.2d 685. This is so even when considering a restrictive provision in a policy. State ex rel. Prudential Ins. Co. v. Shain, 344 Mo. 623, 627, 127 S.W.2d 675. The rule of liberal construction in favor of the insured applies only when the contract is ambiguous and susceptible of more than one interpretation. Newbill v. Union Indemnity Co., Mo.App., 60 S.W.2d 658, 660. If there is no ambiguity, parol evidence may not be introduced to vary the effect of the language of the policy. Ferguson v. Pekin Plow Co., 141 Mo. 161, 171, 42 S.W. 711; Newbill v. Union Indemnity Co., supra.
The coverage afforded the defendants by the policy in force at the time of the accident was restricted, by the non-ownership endorsement, to the liability imposed by law upon them "for damages arising out of accidents resulting from the operation in the business of the Named Insured of any automobile * * *, by any person named in the schedule of this endorsement." (Italics ours.) There is nothing in the policy to indicate that it was intended to insure defendants against liability resulting from the operation in their business of an automobile by an employee who was not named in the schedule of the endorsement at the time of the accident. Nor do we think that there is any ambiguity, either patent or latent, with regard to the risk covered by the policy. It seems quite clear to us that the garnishee only agreed to insure defendants against liability resulting from the operation in their business of automobiles by persons named in the schedule. Referring to the fact that at the time of the accident Robert Jones was replacing Dorsey Gillespie, a listed driver who was on his vacation, the plaintiffs contend that the policy covered the accident in question since the garnishee's "risk at the time of the collision was no greater because of the substitution of Jones for Gillespie"; that the sole purpose of listing employees in the schedule was to enable the garnishee to calculate the premium charges and no premium adjustment was involved when an employee not named in the policy replaced one who was so named. We believe that it made no difference whether a new employee replaced one whose name appeared in the schedule, or was in addition to those already listed. Until his name appeared in the schedule, his operations as a driver in defendants' business were not covered by the policy. The policy made no exception in the case of a new employee who replaced a listed employee, and the court cannot add such an exception to the contract. The garnishee had a right to limit the coverage of the policy to the operations of defendants' employees named in the schedule.
Plaintiffs also contend that the policy was in force on August 21, 1939, and covered the accident in question because it "did not have a forfeiture clause or provide for any suspension or avoidance in *801 case of changing or scheduling drivers." Plaintiffs say that "no penalty is provided by the policy in case the insured changes drivers, adds drivers or eliminates drivers without notifying the company." The garnishee does not contend that the policy was not in force at the time of the accident; nor does it contend that the change of drivers worked a forfeiture of any kind. The case does not involve any question of cancellation, suspension, avoidance or forfeiture of the policy. The defendants could have changed drivers, without notice to the garnishee, as often as they desired, and such changes would not have worked a forfeiture of the policy or of any of defendants' rights thereunder. But such rights did not include coverage of the operations of a driver whose name did not appear in the schedule of the policy. Since Robert Jones was not a person named in the schedule on the day of the accident, it follows that the policy did not cover the liability for damages resulting from the accident.
This view is supported by the case of Newbill v. Union Indemnity Co., Mo.App., 60 S.W.2d 658, 659, a proceeding in garnishment. It was held in this case that an insurer issuing an automobile liability policy for the benefit of the "St. Louis Service Car Association and/or individuals listed herein" could not be compelled to pay a judgment recovered against a member of the association who was driving the service car involved in the accident because the driver's name was not listed in the policy. The court said, 60 S.W.2d loc. cit. 661: "The name of defendant not having been included in the policy, there being nothing on the face of the same to indicate that it was written for his personal benefit, and there being no ambiguity in its language so as to have warranted proof by parol evidence that he was intended to be covered by it, it follows that the insuring of his liability must be held to have been outside of and no part of the undertaking of the garnishee. United Zinc Companies v. General Accident Assurance Corporation, 125 Mo.App. 41, 102 S.W. 605." Plaintiffs attempt to distinguish this case from the one at bar on the ground that the plaintiff in the Newbill case did not obtain a judgment against the named insured but "wanted to stretch or enlarge the policy to cover others than the Named Insured," whereas in the instant case the plaintiffs obtained a judgment against the named insured, not against Robert Jones, and are not "trying to enlarge the policy to `cover'" Robert Jones. We understand, of course, that plaintiffs do not contend that the policy in question insured Robert Jones. While the two cases are not identical, the same principle is involved in both cases. In the Newbill case, as here, the language of the policy was unambiguous and the liability of the garnishee depended upon whether a certain person was named in the policy at the time of the accident. We believe, therefore, that the case cited supports the view expressed above.
Plaintiffs' next contention is that "the garnishee cannot declare a forfeiture and retain the premium it collected in regard to both drivers and still deny liability because of the change of a driver"; and that "there is no evidence or nothing in the pleadings to show that the company ever tendered back to the insured any premium." There is no merit in this point. It was not raised in the pleadings, and there is nothing in the record to show that the question was presented to or decided by the trial court. Indeed, the record is silent as to whether or not the garnishee retained any unearned premium. Furthermore, no question of forfeiture is here involved.
Plaintiffs' next contention is that "the only defense the garnishee can make to this action at this time, after its denial of liability, is based on its statement (in the letter to defendants, dated September 1, 1939) that `no request for coverage on a car driven by Jones had been made until after the occurrence of this accident'"; and that "since there is nothing in the policy to require the insureds to notify the garnishee of a change in drivers it seems to the plaintiffs that there is no basis for this denial of liability." Here plaintiffs cite a case which holds that when an insurance company denies liability and states the ground, or grounds, it waives the grounds not so specified. The garnishee, by its letter *802 of September 1, 1939, denied liability on the ground that "Robert Jones, the party who was involved in the accident, was not listed on our records as a driver for your company," and it put its defense to the garnishment proceeding on that ground as it had a right to do. In the case cited by plaintiffs, the insurer denied liability on one ground and then attempted to defend the action against it on another ground. That is not the situation here. This point must be ruled against plaintiffs.
Plaintiffs' last contention involves the doctrines of waiver and estoppel and is based upon the following evidence: Prior to the issuance of the policy here involved, the garnishee issued to defendants several other policies containing the same provisions as the one now in controversy, the first policy having been issued January 11, 1936. For more than three years transactions between defendants and the garnishee with regard to such insurance had been conducted as follows: Whenever an additional driver was employed, or a driver named in the schedule of the endorsement ceased to work for defendants, or a driver not named in the schedule replaced one who was so named, the defendants notified their agent, the Eddy Agency of St. Louis, and the latter conveyed the information to the garnishee's general agent, who in turn notified the garnishee at its home office in St. Louis where the changes in the endorsement were made. At least seventeen such changes were made upon notice during the period mentioned. The evidence showed that the names of new employees were endorsed on the policy only when the notice reached the garnishee at its home office; that such endorsements were made effective on the date the garnishee received the notice, except in one instance; and that no endorsements were ever issued which were retroactive to the date when the new driver entered upon his duties as an employee of defendants. In the exceptional case just mentioned, a driver named Leopold was involved in an accident on April 13, 1938. A report of the accident, dated April 14, 1938, was received by the garnishee on April 15, 1938. On the same day, April 15, 1938, the garnishee issued its endorsement naming Leopold as an employee of defendants, but the endorsement was dated April 14, 1938. Thereafter the garnishee settled the claim arising out of the accident for $123.00.
Relying upon the foregoing evidence, the plaintiffs contend that the garnishee by its "course of conduct" waived its rights, "if any," and is estopped to deny that the policy covered the accident in question. We do not agree. Here the garnishee makes no claim of forfeiture of the policy; on the contrary, it is insisting upon the contract itself, and is insisting that by its terms it did not insure the risk in question. What is sought here is not to prevent a forfeiture, but to broaden the contract of insurance so as to cover a risk it never covered by its terms. While a forfeiture of benefits contracted for may be waived, the general rule is that the doctrines of waiver and estoppel based upon the conduct of the insurer are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom. See 29 Am.Jur. sec. 903, p. 690; Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S. W.2d 165, 113 A.L.R. 857; Appleman, Insurance Law and Practice, Vol. 16, sec. 9090. In Missouri the coverage of a policy cannot be extended by waiver. Rosenberg v. General Accident Fire & Life Assur. Co., Mo.App., 246 S.W. 1009, 1012. See Mitchell v. American Mutual Ass'n., 226 Mo. App. 696, 46 S.W.2d 231; 45 C.J.S., Insurance, § 674, pages 616, 617. There is, however, some authority to the effect that an insurer may be estopped to deny a broader or different coverage than that specified by the terms of the policy. Blanke-Baer Extract & Preserving Co. v. Ocean Accident & Guarantee Corp., Mo.App., 96 S.W.2d 648, 652, quashed on other grounds State ex rel. Ocean Accident & Guarantee Corp. v. Hostetter, 341 Mo. 488, 108 S.W.2d 17. Even if an insurer may be estopped by its conduct to deny that the loss is within the terms of the policy, it is clear in the instant case that plaintiffs' evidence did not show such conduct on the part of the garnishee. The elements of equitable estoppel include the misleading of a party entitled *803 to rely on the acts or statements in question, and a consequent change of position to his detriment. Board of Education of City of St. Louis v. County of St. Louis, 347 Mo. 1014, 1017, 149 S.W.2d 878, 880.
Plaintiffs' denial of the garnishee's answer alleged "that from and after January 11, 1936, and up to and including August 21, 1939, upon notice of defendants, garnishee frequently and as often as requested, changed the names of the employees named in said policies by endorsement and thereby protected and insured defendants * * * from and after the date of the employment of said new employee, and by its course of conduct garnishee is now estopped to deny" liability in this case. But as shown above, the evidence did not prove these allegations. On the contrary, the evidence was that no endorsements were issued which were retroactive to the date when the new employee entered upon his duties. Except in one instance, the endorsements were made effective on the date the garnishee received notice that a new driver had been employed. It is certain that this evidence did not establish the essential elements of estoppel. Plaintiffs insist, however, that their claim of estoppel is supported by the evidence relating to the garnishee's conduct in connection with the driver Leopold. But even in that case, where the accident occurred on April 13, 1938, the endorsement naming him as an employee was dated April 14, 1938. True, the garnishee paid the claim arising out of that accident. It is our opinion, however, that the garnishee is not estopped to deny liability in the instant case merely because it paid one loss in 1938 with knowledge that the loss did not result from an accident covered by the policy then in force, there being nothing in the evidence to show that defendants changed their position in reliance thereon and were prejudiced thereby. We conclude, therefore, that the evidence did not prove a course of conduct on the part of the garnishee which would sustain plaintiffs' claim of estoppel.
Plaintiffs place great reliance on the case of Ash-Grove Lime & Portland Cement Co. v. Southern Surety Co., 225 Mo.App. 712, 39 S.W.2d 434, an action to recover upon what is known as a "fleet" automobile liability policy. All of the questions decided in this case grew out of the fact that the policy contained an automatic extension provision which was subject to a condition specified therein. Since the policy in the instant case did not contain such a provision, it is obvious that the Ash-Grove case is not controlling here. We have also examined the other cases cited by plaintiffs and find that the facts in those cases are not comparable to those in the case at bar.
For the reasons stated, the judgment should be affirmed.
SPERRY, C., concurs.
PER CURIAM.
The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is affirmed.
DEW, P. J., concurs.
VANDEVENTER, J. (sitting by order of the Supreme Court), concurs.
CAVE and BROADDUS, JJ., not participating.